**Attachment – Civil Cover Sheet**

### I.   (a) Plaintiffs:

BRANDON VIOLA,
MATTHEW SOLOMON,
CHAD REYES,
MOLLY LINTHICUM,
JOSHUA NABORS,
KENNETH MURPHEY,
NICHOLAS SCHMIDLE,
TYLER HOLDER,
ROBERT BALDERSON,
TYLER BRADFORD,
AARON DULL,
JARED BLOSSER,
JUSTIN JUDY,
RYAN STALLINGS,
JOSHUA FRANTZ,
KYLE SAPPINGTON,
ZACHARY TRUMP,
RANDY MICHAEL,
BENJAMIN FORSYTHE,
BRADLEY PALMER,
JONATHAN FAILINGER,
ALEXANDRA ARTHURS,
MATTHEW STARSICK,
MARSHALL FOSTER,
LUCAS HOLDER,
MONICA BRUN,
JEREMY BASINGER,
J. SCOTT BERNOSKY,
CODY YANKULIC,
CHRISTOPHER MAYLE,
JARED LANEVE,
AUSTIN BITTNER,
JOSEPH PATTERSON,
MARK TRUMP, JR.,
BERNIE MOLEK,
NICHOLE SCOTT,
CHAD SHADE,
CHAD WEBSTER,
ZANE BREAKIRON,
CHRISTOPHER CALDWELL,
MARLEE FRANCE,
SIKARIN LAMBAMRUNG,

IAN NUZMAN,

**(c)**

**Plaintiffs' Attorneys:**

Teresa C. Toriseva, Esq.
Joshua D. Miller, Esq.
Michael A. Kuhn, Esq.
TORISEVA LAW
1446 National Road
Wheeling WV  26003
Telephone:  (304) 238-0066
Facsimile (304) 238-0149

**Defendant's Attorneys:**

Matthew D. Elshiaty, WV State Bar #12535
Erin J. Webb, WV State Bar #10847
Ryan P. Simonton, WV State Bar #11152
KAY CASTO & CHANEY PLLC
150 Clay Street, Suite 100
Morgantown, WV  26501
Telephone: (304) 225-0970
Facsimile: (304) 225-0974

Case 1:22-cv-00094-TSK Document 1-1 Filed 09/20/22 Page 3 of 86 PageID #: 13

CASE#: **22-C-214**   Sub Code:

JUDGE: CINDY S. SCOTT

Plaintiff: **BRANDON VIOLA**

vs

Defendant: **CITY OF MORGANTOWN**

Pro Attorney: TERESA TORISEVA

Def Attorney:

Date Opened: 09/07/2022
Date Printed: 09/20/2022

| Page | Date | Memorandum | Account# | Earned | Collected | Balance |
|---|---|---|---|---|---|---|
| 1 | 09/07/2022 | Complaint Filed | | 200.00 | 200.00 | .00 |
| 2 | 09/07/2022 | Process issued by CM | | 20.00 | 20.00 | .00 |
| 3 | 09/07/2022 | Notice of Deposition of Emily Muzzarelli | | .00 | .00 | .00 |
| 4 | 09/07/2022 | Notice of Deposition of A. Kim Haws | | .00 | .00 | .00 |
| 5 | 09/07/2022 | Notice of Deposition of Bill Kawecki | | .00 | .00 | .00 |
| 6 | 09/07/2022 | Notice of Deposition of Dave Harshbarger | | .00 | .00 | .00 |
| 7 | 09/07/2022 | Notice of Deposition of Brian Butcher | | .00 | .00 | .00 |
| 8 | 09/07/2022 | Notice of Depositionof Danielle Trumble | | .00 | .00 | .00 |
| 9 | 09/07/2022 | Notice of Deposition of M.Joe Abu-GGhannam | | .00 | .00 | .00 |
| 10 | 09/07/2022 | Notice of Deposition of Jennifer Selin | | .00 | .00 | .00 |
| 11 | 09/07/2022 | Notice of Deposition of John Bihun | | .00 | .00 | .00 |
| 12 | 09/07/2022 | Notice of Deposition of Kevin Tennant | | .00 | .00 | .00 |
| 13 | 09/07/2022 | Notice of Deposition of Ixya Vega | | .00 | .00 | .00 |
| 14 | 09/14/2022 | Process rcvd by ? for City of Morgantown by CM not dated | | .00 | .00 | .00 |
| | | **Totals** | | **220.00** | **220.00** | **.00** |

A TRUE COPY ATTEST:





**SUMMONS**

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, MATTHEW SOLOMON, CHAD REYES, MOLLY LINTHICUM, JOSHUA NABORS, KENNETH MURPHEY, NICHOLAS SCHMIDLE, TYLER HOLDER, ROBERT BALDERSON, TYLER BRADFORD, AARON DULL, JARED BLOSSER, JUSTIN JUDY, RYAN STALLINGS, JOSHUA FRANTZ, KYLE SAPPINGTON, ZACHARY TRUMP, RANDY MICHAEL, BENJMIN FORSYTHE, BRADLEY PALMER, JONATHAN FAILINGER, ALEXANDRA ARTHURS, MATTHEW STARSICK, MARSHALL FOSTER, LUCAS HOLDER, MONICA BRUN, JEREMY BASINGER, J. SCOTT BERNOSKY, CODY YANKULIC, CHRISTOPHER MAYLE, JARED LANEVE, AUSTIN BITTNER, JOSEPH PATTERSON, MARK TRUMP, JR., BERNIE MOLEK, NICOLE SCOTT, CHAD SHADE, CHAD WEBSTER, ZANE BREAKIRON, CHRISTOPHER CALDWELL, MARLEE FRANCE, SIKARIN IAMBAMRUNG AND IAN NUZMAN

PLAINTIFF(S),

VS.                                                                CIVIL ACTION NO.  22-C-214

THE CITY OF MORGANTOWN,
A municipal corporation,
389 Spruce Street
Morgantown WV  26505

DEFENDANT(S)

To the above-name Defendants:

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve **TERESA TORISEVA, JOSHUA MILLER AND MICHAEL KUHN** whose address is **1446 National Road, Wheeling WV  26003** an answer including any related counterclaim you may have to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are required to serve your answer within **20** days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled action.

DATED:  September 7, 2022

JEAN FRIEND, CLERK
MONONGALIA CO. CIRCUIT COURT

BY _____
DEPUTY CLERK



## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA,
MATTHEW SOLOMON,
CHAD REYES,
MOLLY LINTHICUM,
JOSHUA NABORS,
KENNETH MURPHEY,
NICHOLAS SCHMIDLE,
TYLER HOLDER,
ROBERT BALDERSON,                                    CASE NO: 22-C-214
TYLER BRADFORD,
AARON DULL,                                          JUDGE:_____
JARED BLOSSER,
JUSTIN JUDY,
RYAN STALLINGS,
JOSHUA FRANTZ,
KYLE SAPPINGTON,
ZACHARY TRUMP,
RANDY MICHAEL,
BENJAMIN FORSYTHE,
BRADLEY PALMER,
JONATHAN FAILINGER
ALEXANDRA ARTHURS,
MATTHEW STARSICK,
MARSHALL FOSTER,
LUCAS HOLDER,
MONICA BRUN,
JEREMY BASINGER,
J. SCOTT BERNOSKY,
CODY YANKULIC,
CHRISTOPHER MAYLE,
JARED LANEVE,
AUSTIN BITTNER,
JOSEPH PATTERSON,
MARK TRUMP JR.,
BERNIE MOLEK,
NICOLE SCOTT,
CHAD SHADE,
CHAD WEBSTER,
ZANE BREAKIRON,
CHRISTOPHER CALDWELL,
MARLEE FRANCE,

1

**SIKARIN IAMBAMRUNG**
**IAN NUZMAN**


      **Plaintiffs,**

**v.**


**THE CITY OF MORGANTOWN,**
**a municipal corporation.,**


      **Defendant.**

---

## COMPLAINT

---

### Prefatory Comment as to Plaintiffs

All the Plaintiffs herein, as members of the City of Morgantown Police Department, are similarly situated employees of the Defendant and each is asserting rights arising out of the same transaction, occurrences and the questions of law or fact are common to all Plaintiffs in this action. Pursuant to applicable West Virginia statute and West Virginia case law they are permitted and are filing their case jointly in one action. "Specifically, and the Supreme Court of Appeals of West Virginia so holds, Rule 20(a) provides that all persons may join in one action as plaintiffs if they assert any right to relief (1) arising out of the same transaction or occurrence, and (2) if any question of law or fact common to all these persons will arise in the action. Under Rule 20(a), joinder is proper only if both of these requirements are satisfied." *State ex rel. J.C. v. Mazzone,* 233 W.Va. 457, 459, 759 S.E.2d 200, 202 (2014) See Exhibit 1.

### PARTIES

1. Plaintiff, Brandon Viola is a Police Officer in the Morgantown Police Department and is the President of the Monongalia-Preston Fraternal Order of Police Lodge #87.

2. In addition, the other named-Plaintiffs are also current Morgantown Police Officers, and they are as follows:

2

1) Aaron Dull;
2) Alexandra Arthurs;
3) Austin Bittner;
4) Benjamin Forsythe;
5) Bernie Molek;
6) Bradley Palmer;
7) Brandon Viola;
8) Chad Reyes;
9) Chad Shade;
10) Chad Webster;
11) Christopher Caldwell
12) Christopher Mayle;
13) Cody Yankulic;
14) Ian Nuzum;
15) J. Scott Bernosky;
16) Jared Blosser;
17) Jared LaNeve;
18) Jeremy Basinger;
19) Jonathan Failinger;
20) Joseph Patterson;
21) Joshua Frantz;
22) Joshua Nabors;
23) Justin Judy;
24) Kenneth Murphey;
25) Kyle Sappington;
26) Lucas Holder;
27) Mark Trump Jr.;
28) Marlee France
29) Marshall Foster;
30) Matthew Solomon;
31) Matthew Starsick;
32) Molly Linthicum;
33) Monica Brun;
34) Nicholas Schmidle;
35) Nicole Scott;
36) Randy Michael;
37) Robert Balderson;
38) Ryan Stallings;
39) Sikarin Iambamrung
40) Tyler Bradford;
41) Tyler Holder;
42) Zachary Trump;
43) Zane Breakiron;

3

3. The City of Morgantown is a municipal corporation created pursuant to the laws of the State of West Virginia with its city building ("situs") located in Monongalia County, West Virginia, thus venue is proper in Monongalia County per W.Va. Code § 29-12A-13.

## JURISDICTION AND VENUE

4. Venue is proper in Monongalia County as the City of Morgantown is located in Monongalia County, West Virginia.

5. Jurisdiction is proper in this Court pursuant to W.Va. Code § 56-1-1 in that all acts described herein arose within Monongalia County, West Virginia.

## FACTS

6. Mon Preston FOP Lodge #87 are Civil Service employees and afforded the full protection of West Virginia's Civil Service Law as found in West Virginia Code § 8-14-20 et seq.

7. The Plaintiffs are all sworn law enforcement officers.

8. Most Plaintiffs are members of the Monongalia-Preston Fraternal Order of Police Lodge #87, with approximately five (5) officers not being union members.

9. The Plaintiffs by virtue of their positions and the vital role they play in ensuring public safety are unable to strike or enact work-stoppages relating to work conditions.

10. The Fraternal Order of Police (herein "FOP") is the world's largest organization of sworn law enforcement officers, with more than 364,000 members in 2,200 lodges. The FOP is the voice of those who dedicate their lives to protecting and serving their communities. The FOP is committed to improving the working conditions of law enforcement officers and the safety of those they serve through education, legislation, community involvement and

4

employee representation. *About the Fraternal Order of Police,* https://fop.net/about-the-fop/.

11. The FOP exists to advocate for those committed to ensuring public safety.

12. Plaintiffs' participation in the Fraternal Order of Police is a protected activity.

13. The Plaintiff-Police Officers, despite having a union, are not permitted to collectively bargain or strike to protect their rights as workers.

14. The Police Officers show up for their shifts no matter how bad the City Administration makes the working conditions.

15. The city does not recognize the Mon-Preston FOP Lodge 87 union.

16. Public safety is ensured by a strong, fully staffed, and well-equipped police department.

17. Upon information and belief, the Morgantown Police Department has already received over 20,000 calls for assistance this calendar year.

18. As reported in the Dominion Post on June 18, 2022. "Multiple sources within the Morgantown Police Department say the department is facing a crisis." Ben Conley, *MPD officer: This Department is in a very tough spot,* The Dominion Post (June 18, 2022) https://www.dominionpost.com/2022/06/18/mpd-officer-this-department-is-in-a-very-tough-spot/.

19. Mr. Conley's article continues providing an explanation for the "crisis, stating, "(A) lack of adequate staffing in combination with upcoming changes to city policy, including the elimination of shift differential and new rules for calculating overtime, have moral at an all-time low." *Id.*

20. It is undisputable that a fully staffed police department increases public safety.

21. The Morgantown Police Department is under-staffed.

22. As of August 31, 2022, the Morgantown Police Department was authorized 76 officers. Currently, the department has only fifty-five 55 officers with 4 newly hired officers more than 10 months from working on their own. Ben Conley, *Powell: MPD staffing issues not significantly impacting quality of service,* The Dominion Post (August 31, 2022) https://www.dominionpost.com/2022/08/31/powell-mpd-staffing-issues-not-significantly-impacting-quality-of-service/.

23. While Police Chief Eric Powell insists that the staffing and retention issues, "aren't significantly impacting the quality of work being done by the MPD." *Id.* Plaintiffs assert that morale in the department is low and many officers are actively searching for alternative employment.

24. Upon information and belief, the Morgantown Police Department is struggling to recruit qualified applicants.

25. As experienced, certified police officers leave the Morgantown Police Department, the number of police officers available to patrol the city declines and threats to public safety increase.

26. Morgantown Police Officers are Civil Service employees and afforded the full protection of West Virginia's Civil Service Law as found in W.Va. Code § 8-14-6 et seq.

27. Upon information and belief, the Defendant's City Council is embattled and under siege from the citizens of Morgantown and has been the subject of a recent recall effort.

28. Additionally, members of both the Morgantown IAFF Local 313 and the Mon-Preston FOP Lodge 87 have recently issued a no confidence vote pertaining to city government.

29. As Civil Service employees, Morgantown Police Officers possess a property interest in their jobs and civil service positions.

30. The Morgantown Police Officers are engaged in protracted litigation with the Defendant City of Morgantown which precedes the filing of this action.

31. The actions the city has taken against its police officers is retaliation against those police officers for ascertaining their various rights in court and notifying the authorities of the city's illegal conduct.

32. On May 19, 2021, the Monongalia-Preston Fraternal Order of Police Lodge #87, on behalf of its individual members, filed a Petition for Injunctive Relief Pursuant to West Virginia Code § 53-5-1, West Virginia Civil Rule 65 and for Declaratory Judgment Pursuant to West Virginia Code § 8-14-23.

33. That Petition, filed as Civil Action No.: 21-C-141 was in response to the City of Morgantown's intention to create a Citizens Police Review Board, "to provide for citizen participation in reviewing Police Department policies, practices, and procedures; to promote the availability of data relating to police practices and procedures; and to provide a prompt, impartial, and fair investigation of complaints relating to the Morgantown Police Department."

34. The concept of the Civilian Police Review Board issued from a special committee of City Council and the Morgantown/Kingwood Branch of the NAACP formed to study a civilian police review and advisory board.

35. The Defendant stood by its intention to create the Civilian Police Review and Advisory Board to the bitter end, choosing to support those wishing to create the board and subvert civil service instead of supporting the Plaintiffs and their history of ensuring the public safety.

7

36. The Plaintiff as members of the Monongalia-Preston FOP resisted the creation of the proposed board as it is contrary to West Virginia State law as it relates to the powers of Civil Service Commissions. Further, those Plaintiffs alleged that the proposed review board infringes upon powers statutorily reserved for the Civil Service Commission and it is therefore contrary to state law.

37. On December 16, 2021, the parties appeared before the Honorable Susan B. Tucker for a hearing regarding the Plaintiff's Petition for Injunctive Relief and the Defendant's Counter Petition for Declaratory Judgment.

38. While the Honorable Susan B. Tucker has not entered her order as of the filing of this complaint, Judge Tucker ruled from the bench that she was granting the Plaintiff's Petition for Injunctive Relief and Declaratory Judgment and Denying Defendant's Counter-Petition for Declaratory Judgment.

39. The Agreed Order expected to be signed and entered by Judge Tucker states:

> As addressed in the Plaintiff's Petition for declaratory judgment and its request for injunctive relief, and as briefed or argued before this Court, the Civilian Police Review and Advisory Board created by Ordinance 21-13 infringes, in part, on the powers of the Police Civil Service Commission. Specifically, the Ordinance infringes on the Police Civil Service Act within Section 181.02 ("Misconduct"), as they relate to permitting that board to participate in the complaint process, including investigations and interviewing witnesses, prior to the Morgantown Chief of Police rendering a decision. These sections and provisions of the Ordinance are unlawful and shall be invalidated.

40. Simply put, the Monongalia Preston FOP prevailed in this action against the Morgantown City Council.

41. On May 5, 2022, the Monongalia-Preston Fraternal Order of Police Lodge #87 were again forced to sue the City of Morgantown for failing to produce documents requested in a

8

Freedom of Information Act requests asking for release of the Wage and Compensation Study completed by GovHR in the fiscal year 2022.

42. The Complaint for Declaratory Judgment Pursuant to West Virginia Code § 55-13-1 et seq. and § 29B-1-3 is filed as Civil Action No. 22-C-114.

43. Plaintiff Brandon Viola sent a FOIA request asking for the Wage and Compensation Study because, "the current political climate has led to problems with recruiting and retaining qualified police officers."

44. Plaintiff Brandon Viola's FOIA request further requested this information from the Defendant to, "see if the City of Morgantown is paying City employees (especially, though not limited to, Police officers) reasonable and competitive wages,"

45. Finally, Brandon Viola's FOIA request asserted "Disclosure of the requested information to me (Brandon Viola) is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government…And the safety of the public is directly tied to having (an) adequate number of qualified emergency personnel to providing service, and reasonable and competitive wages are a primary step in ensuring adequate safety."

46. Upon information and belief, as a result of the filing of Civil Action No. 22-C-114 the Defendant eventually provided the Plaintiffs with Wage and Compensation Study as requested months earlier.

47. The City has moved the Court for an Order directing the Plaintiffs to pay the City's legal fees for forcing the City to provide the Wage and Compensation Study when it previously refused to do so.

9

48. On July 1, 2022, the City implemented new HR policy that reduces police officer pay and benefits.

49. Under the City's new pay scheme implemented on July 1, 2022, the pay and leave afforded to Morgantown Police Officers is reduced.

50. These reductions in pay and benefits have affected department morale and threaten public safety as trained, experienced police officer seek other employment further adding to the staffing crisis.

51. Further, some changes have already been rescinded demonstrating the arbitrary and unnecessary nature of the changes.

52. For example, the Morgantown Police Department has historically worked during West Virginia University (herein "WVU") home football games to augment the number of law enforcement personnel on site to assist with law enforcement, traffic control, and other vital public safety functions.

53. The Defendant had sought to change or limit any special pay incentives as it related to WVU football.

54. This plan changed the very first football game of the year. Again, proving that the changes to the leave and pay scheme is arbitrary and meant to punish the civil service employees of the city instead of for the financial benefit of the city.

55. On September 1, 2022, WVU is renewing a heated rivalry with the University of Pittsburgh.

56. Recognizing the need to ensure the public safety the Morgantown Police Department issued a Special Order for September 1, 2022, due to the "Possibility of mass gatherings, celebrations, and civil disturbances at the conclusion of the game. All requested day offs

are cancelled, and no additional leave will be granted for afternoon and midnight shifts. All officers are subject to call out."

57. To ensure public safety afternoon shift officers will work their regular shifts and assignments until relieved by midnight shift.  Then they will be assigned to a special detail; primarily enforcing alcohol, party, noise and other nuisance violations until 0400.

58. Additionally, while seeking to downplay the effect of low staffing numbers and issues with employee retention the city has recently announced "retention bonuses" for police officers.

59. The July 1, 2022 policy significantly reduces overtime availability to the police officers making fewer police officers available to protect and serve the City.

60. The July 1, 2022, HR policy directly reduces firefighter pay and benefits.

61. Were the Defendant committed to public safety and police officer retention it would not have gutted the leave and compensation scheme which once made the Morgantown Police Department an attractive department for potential hires.

## CHANGES TO ACCRUED SICK LEAVE

62. Under the City's new pay scheme implemented on July 1, 2022, no additional sick leave will be accrued by employees. The ability to accrue sick leave was eliminated by the Defendant.

63. The Defendant provided the Plaintiffs with two options to convert sick leave:

   1) Plaintiffs could convert their entire sick leave balance to PTO (paid time off) at the rate of 1-hour sick leave to 1/3 hour of PTO.

   2) The Plaintiffs could retain their sick leave balance for "approved" uses, understanding that they will be ineligible for Short-Term disability benefits until

11

their sick leave balance is exhausted and then they complete the initial eligibility period.

64. The first option this option takes 2/3 of the sick leave that Plaintiffs earned in faithful service to the citizens of Morgantown without any equal compensation.

65. This serves to reduce the amount of accrued sick leave and reduces the value of the sick leave when it is utilized.

## **CHANGE TO ACCRUED VACATION LEAVE**

66. Under the City's new pay scheme implemented on July 1, 2022, the Defendant will allow no additional vacation leave to be accrued by employees.

67. Instead, each employee with an accrued vacation leave balance will have that balance segregated into a separate vacation leave account.

68. Again, the Defendant provided two options for city employees to convert accrued leave.

    1) Their excess vacation balance could be paid down to 240 hours (if above 240 hours) accrued hours as soon as the City can make those payment. With the understanding that it is then the employee's responsibility to utilize their remaining vacation hours prior to the use of any accrued PTO. They further understand that the City retains the right to continue to pay out remaining hours according to the "Retiring historic accrued leave" schedule in the Employee Handbook.

    2) Employees could retain their vacation balance for use and follow the proposed "Retiring Historic Accrues Leave" schedule in the Employee Handbook, subject to the City's ability to provide notice of early payout with proper notice.

12

Understanding that their PTO balance may hit the maximum accrual amount and they will not receive retroactive credit for any time that they did not accrue PTO.

69. Again, both options benefit the Defendant and devalue vacation time already earned by the employee during their faithful service to ensuring the public safety of the citizens of Morgantown.

70. This new vacation policy goes so far as to remind the employee that the accrued hours overs 240 hours will be paid, "as soon as the City can make the payments".

## CHANGE TO ACCRUED HOLIDAY LEAVE

71. Under the City's new pay scheme implemented on July 1, 2022, no additional holiday leave will be accrued by City employees.

72. The City provided three options to deal with accrued holiday leave.

    1) Employees can receive payment for their entire holiday leave balance which will be paid with their next regular pay from the City.

    2) Employees could convert their entire holiday leave balance to vacation leave at the rate of 1 hour of holiday leave to 1 hour of vacation.

    3) They can retain their entire holiday leave balance for approved uses. They understand that they must use holiday leave prior to using any vacation or PTO balance.

73. Most interesting about the options provided to address accrued holiday leave is that the City will issue monetary payment of the police officers' holiday leave balance. This is in direct conflict with the Defendant's arguments in similar litigation with the City's Professional Fire Fighters where the City has repeatedly argued that holiday pay or

13

compensation can only be given in equal time not converted to wages or payment. While this is incorrect, even making the argument is inconsistent with the City's argument on the same topic against a different set of first responders.

## CHANGES TO ACCRUED COMPENSATORY LEAVE

74. Under the City's new pay scheme implemented on July 1, 2022, the City will not use compensatory time in lieu of overtime pay.

75. The City provided two different payout schedules to address accrued compensatory leave.

    1) The employee could receive payout for the entire comp leave balance prior to June 30, 2022.

    2) They could receive payout of only their "Expired" compensatory leave balance prior to June 30, 2022.

## COUNT 1: VIOLATION OF WEST VIRGINIA CONSTITUTION ARTICLE 3 SECTION 16: THE RIGHT TO PETITION FOR REDRESS OF GRIEVANCES

76. Plaintiffs incorporate by reference in this count all other material allegations set forth elsewhere in this Complaint.

77. Article 3, section 16 of the Constitution of West Virginia provides, "The right of the people to assemble in a peaceable manner, to consult for the common good, to instruct their representatives, or to apply for redress of grievances, shall be held inviolate".

14

78. As previously discussed above, the Plaintiffs have brought two lawsuits against the Defendant seeking to defeat an attempt to create a unlawful board of review and separately to force the release of a wage and compensation study.

79. The Plaintiffs are guaranteed the right to seek remedy in the Courts by the Constitution of West Virginia and the Constitution of the United States of America.

80. The Defendant has violated the police officers' rights to seek redress for their grievances by reducing the police officer pay and benefits to punish or retaliate against the police officers for daring to seek that redress.

81. The Defendant has chosen to retaliate against the Plaintiffs and other Morgantown Civil Service employees by reducing their pay and manipulating the leave system to punish those City employees that exercise their right to petition the Courts.

82. As a direct and proximate result of Defendant's actions, the Plaintiffs have suffered personal injuries and damages, including but not limited to mental suffering and mental anguish, past and future lost enjoyment of life, past and future humiliation, embarrassment indignity and shame, economic damages, diminished earning capacity, and future lost wages.

## COUNT 2: OFFICIAL RETALIATION BY CITY OF MORGANTOWN GOVERNMENT ACTORS

83. Plaintiffs incorporate by reference in this count all other material allegations set forth elsewhere in this Complaint.

84. W. Va. Code § 55-7E-2(a) states: "The Legislature finds that:

(1) Employees of this state are entitled to be free from unlawful discrimination, wrongful discharge and unlawful retaliation in the workplace.

15

85. The Plaintiffs filed the Petition for Injunctive Relief and Declaratory Judgment to stop the unlawful creation of the Civilian Review Board which was a report to the Court of wrongdoing by the Defendant City of Morgantown.

86. Also, the Plaintiffs filed a FOIA lawsuit as alleged above to obtain the Wage and Compensation Report the City was unlawfully withholding.

87. Under the City's new pay scheme implemented on July 1, 2022, the City has unlawfully retaliated against its employees by reducing their wages and fringe benefits because the employees reported the wrongdoing of the City of Morgantown Government Actors.

88. As a direct and proximate result of Defendant's actions, the Plaintiffs have suffered personal injuries and damages, including but not limited to mental suffering and mental anguish, past and future lost enjoyment of life, past and future humiliation, embarrassment indignity and shame, economic damages, diminished earning capacity and future lost wages.

## COUNT 3: VIOLATION OF PUBLIC POLICY AND VIOLATIONS OF THE WEST VIRGINIA WAGE PAYMENT AND COLLECTION ACT

89. The Plaintiffs incorporate by reference in this count all other material allegations set forth elsewhere in this Complaint.

90. Each and every Plaintiff-Police Officers agreed to terms of employment, and to be paid wages fringe benefits, before they agreed to become professional firefighters for the City of Morgantown.

91. Therefore, each and every professional police officers was owed wages and fringe benefits that accrued for each hour and/or shift that they worked.

92. W. Va. Code § 21-5-1 (c) states:

16

"The term 'wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Here, it is undisputed the Morgantown professional firefighters are paid an hourly rate when they are working.

93. W. Va. Code § 21-5-1 (c) also states:

"As used in § 21-5-4, § 21-5-5, § 21-5-8a, § 21-5-10, and § 21-5-12 of this code …the term "wages" shall also include then accrued fringe benefits **capable of calculation and payable directly to an employee**: Provided, That nothing herein contained shall require fringe benefits to be calculated contrary to any agreement between an employer and his or her employees which does not contradict the provisions of this article" Emphasis added.

94. The paid time off provided to Morgantown police officers is calculable and payable to the firefighter.

95. W. Va. Code § 21-5-3(a) states:

"Every person, firm, or corporation doing business in this state, except railroad companies as provided in § 21-5-1 et seq. of this code, shall settle with its employees at least twice every month in a manner of the person, firm, or corporation's choosing, as set forth in subsection (b) of this section, and with no more than 19 days between settlements, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services."

96. W. Va. Code § 21-5-12(a) states:

"Any person whose wages have not been paid in accord with this article, or the commissioner or his designated representative, upon the request of such person, may bring any legal action necessary to collect a claim under this article."

97. Under the City's new pay scheme implemented on July 1, 2022, the City has not "settled with its employees…" because the City owes them wages and benefits that were to be calculated under the methods compensation structure prior to July 1, 2022.

17

98. The City has reduced the police officers' pay by changing the manner in which a police officers' paid time is calculated and paid to the police officers.

99. By failing to properly and promptly pay the aforesaid holiday pay to plaintiffs, the City of Morgantown has violated W.Va. Code §21-5-3, by not paying plaintiffs "wages due" them.

100. By virtue of violating W.Va. Code §21-5-3, the City of Morgantown is liable to pay for the costs of this action including the reasonable attorney fees of the plaintiffs pursuant to W.Va. Code §21-5-12 (b).

101. The Plaintiffs incorporate by reference in this count all other material allegations set forth elsewhere in this Complaint.

102. The West Virginia Wage Payment and Collections Act gives the workers a clear legal path to challenge the under payment of their wages.

103. Under the City's new pay scheme implemented on July 1, 2022, the Plaintiff-Police Officers' pay and benefits will be reduced in a way that violates the West Virginia Wage Payment and Collection Act.

104. Rather than defending the lawsuits that have been filed by the Police Officers, (which any defendant is entitled to do), the Defendant has chosen to defend the suit AND preemptively attack the Plaintiff-Police Officers by retaliating against them through a reduction in their wages and fringe benefits.

105. All citizens should expect to be protected from fear of retaliation when bringing a lawful and appropriate challenge to the misdeeds of a Defendant.

106. As a direct and proximate result of Defendant's actions, the Plaintiffs have suffered personal injuries and damages in the form of lost wages, interest on those wages, costs to

bring the action, attorneys' fees. The damages also include but are not limited to mental suffering and mental anguish, past and future lost enjoyment of life, past and future humiliation, embarrassment indignity and shame, economic damages, diminished earning capacity and future lost wages.

## COUNT 4:  VIOLATION OF WEST VIRGINIA CODE §6 C-1-1 ET SEQ., THE WHISTLE-BLOWER LAW

107.    Plaintiffs incorporate by reference in this count all other material allegations set forth elsewhere in this Complaint.

108.    Per West Virginia Code § 6C-1-2(e) the City of Morgantown qualifies as a "public body" as it is, "[a] commission, council, department, agency, board, court, in its nonjudicial functions only, official, special district, corporation or other instrumentality of a county or municipality or a regional or joint governing body of one or more counties or municipalities.

109.    Due to Plaintiffs' filing of the civil action to defeat the unlawful civilian review board and the separate lawsuit to force the city administration to produce the wage and compensation report, Plaintiffs qualify as "Whistle-Blowers" per West Virginia Code § 5-6C-1-2(g) in that they are, "person[s] who witnessed or has evidence of wrongdoing or waste while employed with a public body and who makes a good faith report of, or testifies to, the wrongdoing or waste, verbally or in writing, to one of the employee's superiors, to an agent of the employer or to an apparent authority.

110.    West Virginia Code § 6C-1-3(a) states that, "no employer may discharge, threaten, or otherwise discriminate or retaliate against an employee by changing the employees' compensation, terms, conditions, location, or privileges of employment because the

19

employee, acting on his or her own volition, or a person acting on behalf of under the direction of the employee, makes a good faith report, or is about to report, verbally or in writing to the employer or appropriate authority, an instance of wrongdoing or waste." Emphasis added.

111. W. Va. Code § 6C-1-4(b) states "An employee alleging a violation of this article must show by a preponderance of the evidence that, prior to the alleged reprisal, the **employee**, or a person acting on behalf of or under the direction of the employee, **had reported** or was about to report in good faith, **verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority.** Emphasis added.

112. The employees are the Plaintiff-Police Officers who reported the City's attempted creation of the unlawful Civilian Review Board and the City unlawful concealment of public documents that required a FOIA lawsuit to reveal.

113. W. Va. Code Ann. § 6C-1-6(a) states "[a] person who, as an employer or under color of an employer's authority, violates this article is personally liable for a civil fine of not more than $5,000. A civil fine which is collected under this section shall be paid to the State Treasurer for deposit into the General Fund."

114. The City through its administration has violated the Whistle Blower article.

115. W. Va. Code § 6C-1-6(b) states "[i]n addition to subsection (a) of this section, and notwithstanding any provision in this code to the contrary, if the court specifically finds that the person, while in the employment of a public body, committed a violation of section three of this article with the intent to discourage the disclosure of information, such finding: (1) shall be deemed a finding of official misconduct and malfeasance in office, and may be relied upon as admissible evidence in any subsequent proceeding or petition to remove the

20

person from public office; and (2) may be relied upon by the public body as a basis to discipline the person, including, but not limited to, termination from employment..."

116.     The Plaintiffs filed the civilian review board action and the FOIA lawsuit as a means to report to the Court wrongdoing by the Defendant City of Morgantown.

117.     As a direct and proximate result of Defendant's actions, the Plaintiffs have suffered personal injuries and damages, including but not limited to mental suffering and mental anguish, past and future lost enjoyment of life, past and future humiliation, embarrassment indignity and shame, economic damages, diminished earning capacity and future lost wages.

**PRAYER FOR DAMAGES**

Plaintiff-Police Officers pray for compensatory damages, statutory interest, and attorney fees and costs, under the West Virginia Wage Payment and Collection Act as well as damages and a finding the City, through its administration, violated the police officers' rights under Article 3, section 16 of the Constitution of West Virginia, and further, specifically retaliated against the Plaintiff-Police Officers in violation of W. Va. Code § 55-7E-2(a) and W. Va. Code §6 C-1-1 et seq.,

21

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL COUNTS.**

**BRANDON VIOLA, et al.**
**BY COUNSEL**

Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

22



**EXHIBIT**

**1**

◆ Positive
As of: June 4, 2019 2:32 PM Z

# State ex rel. J.C. v. Mazzone

Supreme Court of Appeals of West Virginia

May 6, 2014, Submitted; May 27, 2014, Filed

No. 14-0207

## Reporter

233 W. Va. 457 *; 759 S.E.2d 200 **; 2014 W. Va. LEXIS 575 ***; 2014 WL 2440032

STATE OF WEST VIRGINIA EX REL. J.C., A MINOR, BY AND THROUGH HIS MOTHER AND NEXT FRIEND, MICHELLE COOK, ET AL., Plaintiffs Below, Petitioners v. THE HONORABLE JAMES P. MAZZONE, LEAD PRESIDING JUDGE, ZOLOFT LITIGATION, MASS LITIGATION PANEL; PFIZER, INC.; ROERIG, A DIVISION OF PFIZER, INC.; AND GREENSTONE, LLC F/K/A GREENSTONE, LTD, Defendants Below, Respondents

**Prior History:** *J. C. v. Pfizer, Inc., 2014 U.S. Dist. LEXIS 14090 (S.D. W. Va., Feb. 5, 2014)*

**Disposition:** WRIT GRANTED.

## Core Terms

chief justice, joined, cases, civil action, circuit court, filing fee, parties, families, rule rule rule, joinder, Manual, rules of civil procedure, single complaint, federal court, issues, complaints, state court, recommendation, assigned, sever, manufacturers, occurrence, courts, Plaintiffs', twenty-five, provides, amendment amendment amendment, requirements, committees, court rule

## Case Summary

### Overview
HOLDINGS: [1]-The families' product liability and negligence claims set out in two complaints met the W. Va. R. Civ. P. 20(a) requirements for joining multiple plaintiffs in one complaint as the claims were logically related and arose from the production, distribution, and promotion of a drug, and the issues of the drug's design, the manufacturers' knowledge of safety, and their representations were common to all of the families; [2]-The Mass Litigation Panel erred in concluding that W. Va. R. Civ. P. 3(a) required the two complaints to be treated substantively as 25 individual causes of action

as that rule was an administrative fee and record keeping provision; it did not provide authority for severing a complaint into two or more separate civil cases; [3]-The Panel did not have authority to vacate the Chief Justice's order finding that the actions constituted two cases.

### Outcome
Writ granted.

## LexisNexis® Headnotes

Civil Procedure > ... > Writs > Common Law Writs > Prohibition

### *HN1*[ ] Prohibition

Insofar as it is an extraordinary remedy, prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.

Civil Procedure > ... > Writs > Common Law Writs > Prohibition

### *HN2*[ ] Prohibition

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, the Supreme Court of Appeals of West Virginia will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain

233 W. Va. 457, *457; 759 S.E.2d 200, **200; 2014 W. Va. LEXIS 575, ***575

the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > Appeals > Standards of Review > Questions of Fact & Law

**HN3[⬇]  De Novo Review**

An interpretation of the West Virginia Rules of Civil Procedure presents a question of law subject to a de novo review.

Civil Procedure > Parties > Joinder of Parties > Permissive Joinder

**HN4[⬇]  Permissive Joinder**

W. Va. R. Civ. P. 20(a) provides for discretionary joinder of multiple plaintiffs in a single complaint. Rule 20(a) sets out a two-pronged test for permissive joinder of plaintiffs. Specifically, and the Supreme Court of Appeals of West Virginia so holds, Rule 20(a) provides that all persons may join in one action as plaintiffs if they assert any right to relief (1) arising out of the same transaction or occurrence, and (2) if any question of law or fact common to all these persons will arise in the action. Under Rule 20(a), joinder is proper only if both of these requirements are satisfied.

Civil Procedure > Parties > Joinder of Parties > Permissive Joinder

**HN5[⬇]  Permissive Joinder**

See W. Va. R. Civ. P. 20(a).

Civil Procedure > Parties > Joinder of Parties > Permissive Joinder

**HN6[⬇]  Permissive Joinder**

Joinder under W. Va. R. Civ. P. 20 is wholly procedural in nature and does not alter the substantive rights of the parties.

Governments > Courts > Rule Application & Interpretation

**HN7[⬇]  Rule Application & Interpretation**

To aid in defining the meaning and scope of West Virginia's Rules of Civil Procedure, the Supreme Court of Appeals of West Virginia often gives substantial weight to federal cases interpreting virtually identical federal rules.

Civil Procedure > Parties > Joinder of Parties > Permissive Joinder

**HN8[⬇]  Permissive Joinder**

See *Fed. R. Civ. P. 20(a)*.

Civil Procedure > Parties > Joinder of Parties > Permissive Joinder

**HN9[⬇]  Permissive Joinder**

The same transaction or occurrence prong of W. Va. R. Civ. P. 20(a) means all logically related events. This does not mean that all events must be identical. The logical relationship test is satisfied if there is a substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, individual claims of the plaintiffs are deemed to have met the same transaction or occurrence requirement where the defendants' alleged infringing acts, which give rise to the individual claims of infringement, share an aggregate of operative facts. In the final analysis, multiple persons may join in one action as plaintiffs if the essential facts of the various

claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit.

Civil Procedure > Parties > Joinder of Parties > Permissive Joinder

**HN10[⬇]  Permissive Joinder**

The second part of the joinder test under W. Va. R. Civ. P. 20(a) requires a showing of commonality. Courts hold that commonality under the rule is not a difficult test to satisfy. Rule 20(a) requires only a single common question be shown, not multiple common questions. The common question of fact or law need not be the most important or predominant issue in the litigation.

Governments > Courts > Clerks of Court

Civil Procedure > ... > Pleadings > Complaints > Filing Fees

**HN11[⬇]  Clerks of Court**

Case law makes clear that, under *W. Va. Code § 59-1-11* (2012), a clerk has a duty to collect a filing fee, in the amount set out under the statute, prior to allowing a complaint to be filed. For purposes of imposing the filing fee, the Supreme Court of Appeals of West Virginia concluded that the statute makes no distinction regarding the number of plaintiffs joining a particular suit.

Governments > Courts > Authority to Adjudicate

**HN12[⬇]  Authority to Adjudicate**

Courts have inherent authority to require necessary resources, such as sufficient funds for operating expenses, work space, parking space, supplies, and other material items. In order for a court to invoke use of its inherent power to require resources, the court must demonstrate that such resources are reasonably necessary for the performance of its responsibilities in the administration of justice. Although courts must be cautious not to reach beyond the power of the judicial branch, it is crucial for the judiciary to be able to invoke such power as is reasonably necessary to maintain itself

as an independent and equal branch of West Virginia's government.

Governments > Courts > Authority to Adjudicate

**HN13[⬇]  Authority to Adjudicate**

A circuit judge or chief judge of a circuit with more than one judge, shall have the authority to enter an administrative order governing when separate filing fees are required and may require additional filing fees in multiple plaintiff cases until such time as a statewide rule governing filing fees in multiple plaintiff cases is promulgated.

Governments > Courts > Authority to Adjudicate

Governments > Courts > Clerks of Court

**HN14[⬇]  Authority to Adjudicate**

When a circuit court clerk receives a complaint, which lists multiple plaintiffs, complies with the West Virginia Rules of Civil Procedure and is accompanied by the filing fee mandated by *W. Va. Code § 59-1-11(a)*, the clerk must file the complaint. Once such a complaint has been filed, the circuit judge to whom the case has been assigned must determine whether the requirements are met such that additional filing fees should be assessed.

Governments > Courts > Authority to Adjudicate

Civil Procedure > Parties > Joinder of Parties > General Overview

**HN15[⬇]  Authority to Adjudicate**

In the final analysis, case law from the United States District Court for the Southern District of West Virginia supports the proposition that, under the authority of West Virginia case law, multiple plaintiffs can join in a single complaint, even though they are charged separate filing fees and assigned separate docket numbers.

Civil Procedure > ... > Pleadings > Complaints > General

Overview

HN16[↧] See W. Va. R. Civ. P. 3(a).

Civil Procedure > Parties > Joinder of Parties > General Overview

HN17[↧] The Supreme Court of Appeals of West Virginia's intent behind W. Va. R. Civ. P. 3(a) is expressly set out in case law. That case law rejected a local circuit court rule that barred joinder of plaintiffs in a single complaint. The case law approved of such joinder and authorized circuit courts to assess separate filing fees in those circumstances.

Civil Procedure > ... > Pleadings > Complaints > General Overview

Civil Procedure > Parties > Joinder of Parties > General Overview

HN18[↧] All that W. Va. R. Civ. P. 3(a) is intended to do is to attach a separate filing fee and record keeping docket number for multiple persons, not related by marriage, a derivative or fiduciary relationship, who are joined as plaintiffs in a complaint.

Civil Procedure > ... > Pleadings > Complaints > General Overview

HN19[↧] A complaint is synonymous with a civil action. Moreover, a civil action is defined as an action brought to enforce, redress, or protect private rights. A civil action brought to redress an injury is embodied in the complaint. If there is no complaint, there is no civil action. In other words, the filing of a complaint, regardless of how many plaintiffs are joined, is but one civil action. While it is true there may be many theories set out in a complaint, this does not alter the fact that only one civil action is commenced through the filing of one complaint. The number of complaints filed determines the number of civil actions filed.

Civil Procedure > Parties > Joinder of Parties > Permissive Joinder

HN20[↧] Permissive Joinder

It is black letter law that when plaintiffs are initially joined in a complaint, there is no requirement that a separate motion for joinder be made under W. Va. R. Civ. P. 20(a).

Civil Procedure > ... > Pleadings > Complaints > General Overview

HN21[↧] The Supreme Court of Appeals of West Virginia holds that W. Va. R. Civ. P. 3(a) provides that for a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court. Rule 3(a) is an administrative fee and record keeping provision. The use of multiple case docket numbers is for the purpose of assessing and tracking filing fees, and for tracking documents that may apply to individual plaintiffs. Rule 3(a) does not provide authority for severing a complaint substantively into two or more separate civil cases.

Governments > Courts > Court Personnel

HN22[↧] Court Personnel

As a general matter, the Chief Justice of the Supreme Court of Appeals of West Virginia has the constitutional authority to issue administrative orders controlling the courts in West Virginia. W. Va. Const. art. III, § 3.

Civil Procedure > Preliminary Considerations > Venue > Multidistrict Litigation

HN23[↧] Multidistrict Litigation

W. Va. Mass Lit. R. 26.06(a)(3).

Civil Procedure > Preliminary Considerations > Venue > Multidistrict Litigation

HN24[↧] Multidistrict Litigation

233 W. Va. 457, *457; 759 S.E.2d 200, **200; 2014 W. Va. LEXIS 575, ***575

W. Va. Mass Lit. R. 26.06(a)(3) permits any party or affected judge to file a response to the motion.

Civil Procedure > Preliminary
Considerations > Venue > Multidistrict Litigation

*HN25[↧]* **Multidistrict Litigation**

W. Va. Mass Lit. R. 26.06(c)(1) provides that the motion for referral and all reply memoranda must be submitted for review to the Chief Justice of the Supreme Court of Appeals of West Virginia. This provision of the rule provides the Chief Justice with two options: Upon review of the motion and reply memoranda, the Chief Justice may act directly upon the motion or may direct the Panel to conduct a hearing and make recommendations concerning coordinated or consolidated proceedings under this rule.

Civil Procedure > Preliminary
Considerations > Venue > Multidistrict Litigation

*HN26[↧]* **Multidistrict Litigation**

There is no provision in the West Virginia Mass Litigation Rules that gives the Mass Litigation Panel the authority to vacate an order by the Chief Justice of the Supreme Court of Appeals of West Virginia.

Civil Procedure > Preliminary
Considerations > Venue > Multidistrict Litigation

*HN27[↧]* **Multidistrict Litigation**

W. Va. Mass Lit. R. 26.05(f) states that the West Virginia Mass Litigation Panel can take such action as is reasonably necessary and incidental to the powers and responsibilities conferred by this rule or by the specific directive of the Chief Justice of the Supreme Court of Appeals of West Virginia. W. Va. Mass Lit. R. 26.05, in its entirety, allows the Panel to implement procedural devices for efficiently handling cases referred by the Chief Justice. However, the Supreme Court of Appeals does not find that this provision authorizes the Panel to vacate an order of the Chief Justice.

Civil Procedure > Preliminary

Considerations > Venue > Multidistrict Litigation

*HN28[↧]* **Multidistrict Litigation**

See W. Va. Mass Lit. R. 26.05.

Civil Procedure > Preliminary
Considerations > Venue > Multidistrict Litigation

*HN29[↧]* **Multidistrict Litigation**

There is no provision in the West Virginia Mass Litigation Rules that expressly or implicitly gives the Mass Litigation Panel discretion to convert two cases referred to it by the Chief Justice of the Supreme Court of Appeals of West Virginia into 25 separate cases. In fact, the Mass Litigation Rules are careful to expressly limit the ability of the Panel to substantively add more cases. For example, under W. Va. Mass Lit. R. 26.09(b), if the initial order of the Chief Justice granting a motion to refer to the Mass Litigation Panel does not authorize the Panel to transfer and join with the existing Mass Litigation any subsequently filed actions, the procedure under W. Va. Mass Lit. R. 26.06 shall be followed. Rule 26.09(b) makes clear that, absent express authorization by the Chief Justice, the Panel cannot add new cases to its litigation.

Civil Procedure > Preliminary
Considerations > Venue > Multidistrict Litigation

*HN30[↧]* **Multidistrict Litigation**

When an order of the Chief Justice of the Supreme Court of Appeals of West Virginia transfers cases to the Mass Litigation Panel, the Panel has no authority to separate the cases under W. Va. R. Civ. P. 3(a) for the purpose of substantively increasing the number of cases that were transferred.

Civil Procedure > Preliminary
Considerations > Venue > Multidistrict Litigation

*HN31[↧]* **Multidistrict Litigation**

The West Virginia Mass Litigation Panel has the authority to implement procedural mechanisms to address the numerous individual and collective unique issues that are inherent in mass litigation. The West

233 W. Va. 457, *457; 759 S.E.2d 200, **200; 2014 W. Va. LEXIS 575, ***575

Virginia Rules of Civil Procedure provide a host of mechanisms for the Panel to use in efficiently processing mass litigation cases.

# Syllabus

### [*459] [**202]  BY THE COURT

1. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger, 199 W. Va. 12, 483 S.E.2d 12 (1996)*.

2. Rule 20(a) of the West Virginia Rules of Civil Procedure provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief . . . [1] arising out of the same transaction [or] occurrence . . . and [2] if any question of law or fact common to all these persons will arise in the action." Under Rule 20(a), joinder is proper only if both of these requirements are satisfied.

3. Rule 3(a) of the West Virginia Rules of Civil Procedure provides that "[f]or a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court." Rule 3(a) is an administrative fee and record keeping provision. The use of multiple case docket numbers is for the purpose of assessing and tracking filing fees, and for tracking documents that may apply to individual plaintiffs. Rule 3(a) does not provide authority for severing a complaint

substantively into two or more separate civil cases.

**Counsel:** [***1] For Petitioners: Bert Ketchum, Greene, Ketchum, Farrell, Bailey & Tweel, Huntington, West Virginia and Ancil G. Ramey, Steptoe & Johnson, Huntington, West Virginia.

For Respondents: Michael J. Farrell, Erik W. Legg, Megan Farrell Woodyard, Farrell, White & Legg, Huntington, West Virginia and Mark S. Cheffo, Quinn Emanuel Urquhart & Sullivan New York, New York.

**Judges:** CHIEF JUSTICE DAVIS delivered the Opinion of the Court. JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion. JUSTICE KETCHUM, deeming himself disqualified, did not participate in the decision of this case.

**Opinion by:** Davis

# Opinion

### PETITION FOR WRIT OF PROHIBITION

### Davis, Chief Justice:

In this proceeding, twenty-five plaintiff families (hereinafter collectively "the Petitioners")[1] have invoked the original jurisdiction of this Court to obtain a writ of prohibition to prevent enforcement of an order by the Mass Litigation Panel (hereinafter "the Panel"). The Petitioners were referred by the Chief Justice of this Court to the Panel as two civil actions consisting of nineteen plaintiff families in one action, and six plaintiff families in the other. The Panel entered an order that divested the Petitioners of their status as two civil [***2] actions and transformed them substantively into twenty-five separate actions. The Petitioners allege that, as a result of the Panel's order, the overwhelming majority of the Petitioners and their claims will be removed to federal court by the Respondents.[2] The Petitioners now [*460] [**203] ask this Court to prevent enforcement of the order on the grounds that the Panel did not have authority to substantively alter their status as two civil actions. After a careful review of the briefs, the record submitted, and listening to the argument of the parties,

---

[1] Each plaintiff family consists of a mother and her child.

[2] The Respondents are the drug manufacturer Pfizer, Inc., and two of its subsidiaries, Roerig and Greenstone, LLC. While it is not clear, the record suggests that Roerig no longer exists.

233 W. Va. 457, *460; 759 S.E.2d 200, **203; 2014 W. Va. LEXIS 575, ***2

we grant the writ.[3]

I.

## FACTUAL AND PROCEDURAL HISTORY

This matter began on July 11, 2012, when nineteen children, by and through their mothers, filed a single complaint alleging products liability and negligence claims against the Respondents in the Circuit Court [***3] of Wayne County.[4] The complaint alleged that each child was born with a birth defect as a result of his or her mother ingesting a drug namedZoloft(alsocalledSertraline)thatwasmanufactured bytheRespondents.[5] Consistent with the requirements of Rule 20(a) of the West Virginia Rules of Civil Procedure, the complaint alleged that "joinder of Plaintiffs' claims is proper because Plaintiffs' claims arise out of the same acts and/or omissions of Defendants and/or involve common questions of law and/or fact."[6] Although only one complaint was filed, Rule 3(a) of the West Virginia Rules of Civil Procedure required each plaintiff family to pay a filing fee and be docketed with a separate civil action number.[7]

On August 7, 2012, the Respondents removed the claims of eighteen of the plaintiff families to a federal district court [***4] in the Southern District of West Virginia.[8] The Respondents removed the claims on the grounds that, under Rule 3(a), the claims were actually eighteen separate actions, not one case. While the matter was pending in federal court, the circuit court clerk filed an affidavit in that proceeding explaining that the separate civil action numbers assigned to the plaintiffs were solely for administrative filing fee purposes and that the matter constituted only one case. The plaintiffs filed a motion to remand the case back to circuit court. The federal district judge granted the motion to remand. See *J.C. ex rel. Cook v. Pfizer, Inc., Nos. 3:12-CV-04103, et al., 2012 U.S. Dist. LEXIS 136791, 2012 WL 4442518 (S.D. W. Va. Sept. 25, 2012).*[9]

After the federal district court remanded the case, the Respondents filed a motion to dismiss the claims asserted by the plaintiff family from New York on the grounds of *forum non conveniens.*[10] The circuit court denied the motion to [***5] dismiss the New York plaintiff family. The Respondents subsequently filed a petition for writ of prohibition with this Court seeking to prohibit enforcement of the circuit court's order denying dismissal of the New York plaintiff family. This Court refused the petition.

The Respondents eventually filed a motion to have the nineteen plaintiff families referred to the Panel. Pursuant to the authority of Rule 26.06(c)(3) of the Mass Litigation [*461] [**204] Rules,[11] the Chief Justice of this Court entered an order on September 24, 2013, denying the motion to refer the plaintiff families to the Panel.[12] Contrary to the Respondents' recitation of the facts, the motion was denied because the plaintiff families' cause of action constituted only one case. The order by the Chief Justice specifically provided "that such Motion to Refer should be denied without prejudice to renew the motion [***6] in the event additional state actions are

---

[3] We wish to acknowledge that the Court invited the Panel to file a brief in this matter. We have considered the Panel's brief and its accompanying appendix.

[4] The residency of each plaintiff family was as follows: West Virginia, Michigan, Connecticut, Oklahoma, Texas, Tennessee, Maryland, Oregon, South Carolina, Ohio, New York, Louisiana (2), Pennsylvania (2), Florida (2), and North Carolina (2).

[5] Zoloft is used to treat several disorders that include major depression, acute post traumatic stress, and panic disorder.

[6] The application of Rule 20(a) is discussed fully in Section III. A, *infra.*

[7] The application of Rule 3(a) is discussed fully in Section III. B, *infra.*

[8] One of the plaintiff families was not removed because its residency, New York, was the same as the headquarters of Respondent Pfizer.

[9] The Respondents appealed the district court's order. The Fourth Circuit dismissed the appeal on the grounds that it lacked subject matter jurisdiction to address a remand order. See *E.D. ex rel. Darcy v. Pfizer, Inc., 722 F.3d 574 (4th Cir. 2013).*

[10] This motion to dismiss was an effort to once again remove the case to federal court because complete diversity of jurisdiction would occur if the New York plaintiff family was dismissed from the case. See *Stiftung v. Plains Mktg., 603 F.3d 295, 297 (5th Cir. 2010)* ("A federal court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same citizenship as any one of the defendants.").

[11] This rule is presented fully in Section III. C, *infra.*

[12] Justice Benjamin was the Chief Justice at that time.

filed."[13]

On October 28, 2013, six children, by and through their mothers, filed a single complaint in the Circuit Court of Wayne County, that also alleged products liability and negligence claims against the Respondents.[14] The complaint alleged that each child was born with a birth defect that was caused by Zoloft.[15] Although only one complaint was filed, each plaintiff family was required to pay a filing fee and be docketed with a separate civil action number. On the same date that the complaint was filed, the circuit court entered an order consolidating the complaint of the six plaintiff families with the previously filed complaint of the nineteen plaintiff families.

After the two complaints were consolidated, the Petitioners filed a motion to refer the matter to the Panel on December 2, 2013. On January 14, 2014, the Chief Justice of this Court entered an order transferring the two consolidated cases to the Panel.[16]

Prior to the two cases being transferred to the Panel, the Respondents filed a second notice of removal in federal court on December 23, 2013. In this second removal attempt, the Respondents named all nineteen plaintiff families that filed the first complaint.[17] The Respondents argued that the plaintiff family from New York was fraudulently joined. Therefore, complete diversity [***8] existed with the remaining eighteen plaintiff families. The federal district court denied the motion to remove on the grounds that "partial removal of

a consolidated state civil action is improper." *J.C. ex rel. Cook v. Pfizer, Inc., No. 3:13-33048, 2014 U.S. Dist. LEXIS 14090, 2014 WL 495455, at *5 (S.D. W. Va. Feb. 5, 2014)*.

After the two cases were referred to the Panel, a status conference was held on March 4, 2014. During the conference, the six Panel members introduced themselves and provided some commentary on the history of mass litigation in the State. The Panel also informed the parties that it interpreted Rule 3(a) to mean that the two complaints filed were actually twenty-five separate civil actions. The Panel later restated its interpretation of Rule 3(a) in an order entered on March 11, 2014. The Petitioners filed the instant petition for a writ of prohibition to prevent enforcement of that order separating the litigation into twenty-five cases.

II.

**STANDARD OF REVIEW**

In this proceeding, the Petitioners seek a writ of prohibition to preclude enforcement of an order by the Panel that interpreted Rule 3(a) as essentially nullifying joinder of unrelated plaintiffs in a single complaint. [***9] *HN1*[⬆] Insofar as it is an extraordinary remedy, "[p]rohibition lies only to restrain [*462] [**205] inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. pt. 1, *Crawford v. Taylor, 138 W. Va. 207, 75 S.E.2d 370 (1953)*. In cases where a lower court is alleged to have exceeded its authority, we apply the following standard of review:

*HN2*[⬆] In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5)

---

[13] In order to have a proceeding initiated before the Panel, at least two cases must be referred that meet the definition of "Mass Litigation" under Rule 26.04(a) of the Mass Litigation Rules. This rule is presented fully in Section III. C, *infra*.

[14] The residency of each plaintiff family was as follows: West Virginia, New York, South Carolina, Iowa, Indiana, and Illinois.

[15] The attorneys for the six [***7] new plaintiff families are the same attorneys representing the nineteen plaintiff families. It appears that the six plaintiff families initially tried to intervene in the case involving the nineteen plaintiff families. However, they withdrew their motion to intervene. Thereafter, counsel attempted to amend the complaint of the nineteen plaintiff families in order to add the six plaintiff families, but the trial court denied the motion to amend and directed the six plaintiff families to file a separate complaint.

[16] The author of this opinion entered the referral order.

[17] The Respondents did not seek to remove the six plaintiff families that filed the second action.

233 W. Va. 457, *462; 759 S.E.2d 200, **205; 2014 W. Va. LEXIS 575, ***9

whether the lower tribunal's order raises new and important problems or issues [***10] of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger, 199 W. Va. 12, 483 S.E.2d 12 (1996)*.

This proceeding also will require this Court to interpret our Rules of Civil Procedure. In that regard, we have held that *HN3*[⬆] "[a]n interpretation of the West Virginia Rules of Civil Procedure presents a question of law subject to a *de novo* review." Syl. pt. 4, *Keesecker v. Bird, 200 W. Va. 667, 490 S.E.2d 754 (1997)*.

With the foregoing standards as our foundation, we now consider the merits of the Petitioners' request for a writ of prohibition.

III.

**DISCUSSION**

In this proceeding, we have been called upon to determine whether the Panel was correct in *sua sponte* deciding that, under Rule 3(a), the two cases that were referred to it by the Chief Justice had to be litigated substantively as twenty-five separate cases. Resolution of this issue involves three considerations: (1) the requirements for joining multiple plaintiffs in one complaint under Rule 20(a); (2) the impact of Rule 3(a) on joinder of multiple plaintiffs in one [***11] complaint; and (3) the authority of the Panel to vacate an administrative order issued by the Chief Justice of this Court. We will address each issue separately.

**A. The Requirements for Joining Multiple Plaintiffs in One Complaint under Rule 20(a)**

Each of the Petitioners that joined in the two complaints filed below did so under Rule 20(a). *HN4*[⬆] This rule provides for discretionary joinder of multiple plaintiffs in

a single complaint.[18] "Rule 20(a) sets out a two-pronged test for permissive joinder of plaintiffs[.]" Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 20(a), at 572 (4th ed. 2012). Specifically, and we so hold, Rule 20(a) of the West Virginia Rules of Civil Procedure provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief . . . [1] arising out of the same transaction [or] occurrence . . . and [2] if any question [*463] [**206] of law or fact common to all these persons will arise in the action."[19] Under Rule 20(a), "[j]oinder is proper only if both of these requirements are satisfied." *Smith v. Planned Parenthood of St. Louis Region, 225 F.R.D. 233, 243 (E.D. Mo. 2004)*.

The purpose of Rule 20(a)'s "permissive joinder is the promotion of judicial economy by preventing both the duplication of effort and the uncertainty embodied in piecemeal litigation." *Morris v. Crown Equip. Corp., 219 W. Va. 347, 356 n.8, 633 S.E.2d 292, 301 n.8 (2006)*. Moreover, *HN6*[⬆] "[j]oinder under Rule 20 is wholly procedural in nature and does not alter the substantive rights of the parties." Cleckley, Davis, and Palmer, *Litigation Handbook*, § 20, at 570 (footnote omitted).

---

[18] The issue of mandatory joinder of parties in a complaint is governed by Rule 19 of the West Virginia Rules of Civil Procedure. *See* Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* [***12], § 19(a), at 559 (4th ed. 2012) ("If Rule 19(a) analysis determines the person should join as a plaintiff, but he/she refuses to do so, the person may be made . . . an involuntary plaintiff."). *See also Calgon Corp. v. Nalco Chem. Co., 726 F. Supp. 983, 990 (D. Del. 1989)* ("We will also give Calgon leave to file a Rule 19 motion to join Kurita as an involuntary plaintiff within the 30 days if Calgon should determine that Kurita will not enter a voluntary appearance."). Insofar as the instant matter concerns discretionary joinder, we will limit our analysis to Rule 20(a).

[19] Rule 20(a) provides in full as follows:

> *HN5*[⬆] All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to

The two-pronged test under Rule 20(a) also is contained in *Rule 20(a) of the Federal Rules of Civil Procedure.*[20] The decisions of this Court have indicated that, *HN7*[⬆] "[t]o aid in defining the meaning and scope of this state's individual civil rules of procedure, this Court often gives substantial weight to federal cases interpreting virtually identical federal rules." *State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone, 220 W. Va. 525, 533 n.6, 648 S.E.2d 31, 39 n.6 (2007).* In that regard, we find that the decision in *In re Prempro Products Liability Litigation, 591 F.3d 613 (8th Cir. 2010),* helps illustrate the application of *Rule 20(a)* in the context of multiple plaintiffs suing several drug manufacturers. The decision in *Prempro* involved three lawsuits filed in a Minnesota state court. One complaint was filed by fifty-seven women, [***14] another was brought by the representatives of six deceased women and the third complaint was filed by sixty women. All three complaints alleged that the women developed breast cancer from their use of the defendants' medications.[21] The defendants removed all three cases to federal district court. The federal district court found that some of the plaintiffs were fraudulently joined to defeat federal diversity jurisdiction, and that the plaintiffs failed to satisfy the joinder requirements under *Rule 20(a).* The Eighth Circuit Court of Appeals disagreed with the district court on both issues and ordered the cases be remanded to the Minnesota state court. With respect to the *Rule 20(a)* issue, the Eighth Circuit reasoned as follows:

---

> all defendants will arise in the action. A plaintiff or defendant need not [***13] be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

[20] *Federal Rule of Civil Procedure 20(a)* provides, in relevant part:

> *HN8*[⬆] (a) Persons Who May Join or Be Joined.
>
> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; [***16] and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

[21] The Respondent Pfizer also was one of the defendants in all three cases.

After considering the Rule 20 joinder standards, we conclude that the manufacturers have not met their burden of establishing that plaintiffs' claims are egregiously misjoined. Plaintiffs' claims arise from a series of transactions between HRT pharmaceutical manufacturers and individuals that have used HRT drugs. Plaintiffs allege the manufacturers conducted a national sales and marketing campaign to falsely promote the safety and benefits of HRT drugs and understated the risks of HRT drugs. [***15] Plaintiffs contend their claims are logically related because they each developed breast cancer as a result of the manufacturers' negligence in designing, manufacturing, testing, advertising, warning, marketing, and selling HRT drugs. Some of the plaintiffs allege to [*464] [**207] have taken several HRT drugs made by different manufacturers.

Furthermore, given the nature of the plaintiffs' claims, this litigation is likely to contain common questions of law and fact. One such common question might be the causal link between HRT drugs and breast cancer. Causation for all of the plaintiffs' claims will likely focus on the 2002 WHI study suggesting a link between HRT drugs and breast cancer and whether the manufacturers knew of the dangers of HRT drugs before the publication of that study.

*Prempro, 591 F.3d at 623* (internal citation omitted). We find *Prempro* instructive of the resolution of the *Rule 20(a)* joinder issue in this case.

In the instant proceeding, the Petitioners contend that they satisfied both requirements of *Rule 20(a)* in joining nineteen plaintiff families in the first complaint and six plaintiff families in the second complaint. We agree.

*HN9*[⬆] The same transaction or occurrence prong of *Rule 20(a)* means all logically related events. This does not mean that all events must be identical. *See Mosley v. General Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)* ("Absolute identity of all events is unnecessary."). "[T]he logical relationship test is satisfied if there is a substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant[.]" *Klamath Irrigation Dist. v. United States, 113 Fed. Cl. 688, 707 (2013)* (internal quotations and citation omitted). In other words, individual claims of the plaintiffs are deemed to have met the same transaction or occurrence requirement "where the defendants' alleged infringing acts, which give rise to the individual claims of

infringement, . . . share an aggregate of operative facts." In re Rivera Lugo, 503 B.R. 13, 17 (Bkrtcy. D. P.R. 2013) (internal quotations and citations omitted). In the final analysis, multiple persons may join in one action as plaintiffs if "the essential facts of the [***17] various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit." Martin v. Bank of Am., N.A., No. 13 Civ. 02350 (ILG) (SMG), 2014 U.S. Dist. LEXIS 32231, 2014 WL 977653, at *2 (E.D.N.Y. Mar. 12, 2014) (internal quotations and citation omitted).

In this proceeding, both complaints allege that the Respondents designed, manufactured, and promoted the drug Zoloft. The Respondents in this proceeding are companies that essentially constitute a single manufacturer. The complaints allege that each plaintiff mother ingested Zoloft while pregnant, in a manner and dosage recommended by the Respondents and as prescribed by the plaintiff mothers' doctors. It is also contended that each plaintiff child allegedly suffered birth defects as a result of the drug. Both complaints allege that the Respondents knew or should have known of risks associated with taking the drug during pregnancy. The complaints allege that the Respondents failed to adequately disclose the risks of birth defects to the plaintiff mothers and the medical community. The Petitioners contend in the complaints that the Respondents actively concealed and suppressed those dangers. The complaints allege that the plaintiff mothers' treating [***18] physicians would not have prescribed Zoloft had adequate warnings and information about its risks appeared on the drug label. We find that these allegations satisfy the first requirement of Rule 20(a). The claims alleged in the complaints are logically related and arise from the same transactions or occurrences, i.e., the production, distribution, and promotion of Zoloft.[22]

HN10[⬆] The second part of the joinder test under Rule 20(a) requires a showing of commonality. Courts have

held that commonality under the rule is not a difficult test to satisfy. See Bridgeport Music, Inc. v. 11C [*465] [**208] Music, 202 F.R.D. 229, 231 (M.D. Tenn. 2001) ("[T]he common question test[ ] is usually easy to satisfy." (citation omitted)). Rule 20(a) requires only a single common [***19] question be shown, not multiple common questions. See Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc., 233 F.R.D. 615, 617 (D. Kan. 2006) ("Some, not all, questions of law or fact must be common."). The common question of fact or law "need not be the most important or predominant issue in the litigation." Nguyen v. CTS Elecs. Mfg. Solutions Inc., No. 13-CV-03679-LHK, 301 F.R.D. 337, 2014 U.S. Dist. LEXIS 1645, 2014 WL 46553, at *4 (N.D. Cal. Jan. 6, 2014). The Petitioners' claims also satisfy the second requirement of Rule 20(a). A few of the questions of fact common to all Petitioners include the design of Zoloft, the Respondents' knowledge of the drug's safety, and their representations about its safety.[23]

In sum, the allegations set out in the two complaints are sufficient to permit joinder under Rule 20(a).[24]

### B. The Impact of Rule 3(a) on Joinder of Multiple Plaintiffs in One Complaint

---

[22] In the attempted removal to federal court involving the eighteen plaintiff families, the district court judge also found that the Petitioners satisfied the same transaction or occurrence prong of federal Rule 20(a). See J.C. ex rel. Cook v. Pfizer, Inc., 2012 U.S. Dist. LEXIS 136791, 2012 WL 4442518, at *5 ("Plaintiffs argue that the claims in the complaint satisfy the same transaction or occurrence requirements of Rule 20 because the claims all arise 'out of the design and mass production of Zoloft and its distribution without adequate labeling of known risks and warning about the drug's inherent dangers.' The Court agrees.").

[23] In the attempted removal to federal court involving the eighteen plaintiff families, the district court judge also found that the Petitioners satisfied the common question of fact or law prong of federal Rule 20(a). See J.C. ex rel. Cook v. Pfizer, Inc., 2012 U.S. Dist. LEXIS 136791, 2012 WL 4442518, at *6 ("Plaintiffs' claims also satisfy the second requirement of Rule 20(a)—that any question of law or fact common to all plaintiffs will arise in this action.").

[24] Our determination that the allegations in both complaints satisfy the joinder requirements under Rule 20(a) is consistent with findings by other courts in cases involving the drug Zoloft. See T.F. ex rel. Foster v. Pfizer, Inc., No. 4:12CV1221CDP, 2012 U.S. Dist. LEXIS 101859, 2012 WL 3000229, at *2 (E.D. Mo. July 23, 2012) [***20] ("Plaintiffs in this case have filed suit against defendants for injuries caused by the same drug [Zoloft] and arising out of the same development, marketing and sales practices for that drug, and common issues of law and fact are likely to arise in the litigation."); In re: Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig., 856 F. Supp. 2d 1347, 1348 (J.P.M.L. 2012) ("On the basis of the papers filed and the hearing session held, we find that these 57 actions involve common questions of fact[.] These actions share factual questions arising out of allegations that Zoloft causes birth defects in children whose mothers ingest the drug while pregnant.").

Although the two complaints filed in this matter set out allegations that satisfied the requirements for permissive joinder under _Rule 20(a)_, the Panel determined that Rule 3(a) required the two complaints to be treated substantively as twenty-five individual causes of action. The Panel has pointed out that it proposed an amendment to Rule 3(a) in 2008,[25] which incorporated language that required unrelated plaintiffs pay a separate filing fee and be docketed with a separate civil action number. The Panel has indicated that it proposed the amendment for substantive purposes, not [***21] for administrative fee purposes. We do not question what the Panel may have intended in proposing the amendment to Rule 3(a) in 2008. However, this Court's intent in adopting the amendment to Rule 3(a) predates 2008, and was, in fact, articulated in _Cable v. Hatfield, 202 W. Va. 638, 505 S.E.2d 701 (1998)_. Consequently, before we examine Rule 3(a) and the Panel's interpretation thereof, we must look at the precursor to Rule 3(a) that was created in _Cable_.

**1. Joining multiple plaintiffs in one complaint under Cable.** The decision in _Cable v. Hatfield_ came to this Court as an appeal by plaintiffs from a circuit court order that denied their petition for a writ of mandamus. The plaintiffs in _Cable_ attempted to have a complaint filed that named sixteen persons as plaintiffs, but the circuit clerk refused to file the complaint.[26] The clerk determined that, under a local court rule, multiple plaintiffs could not be joined in a single complaint; therefore, each plaintiff had to file a separate complaint and a separate filing fee.[27] The plaintiffs filed a petition for a writ of mandamus with the circuit court seeking to compel the clerk [***22] to file the complaint. The circuit court denied relief, and the plaintiffs appealed.

[*466] [**209]  At the outset in _Cable_, this Court recognized that the issue of the assessment of a fee for filing a civil complaint was governed by statute. See _W. Va. Code § 59-1-11_ (2012) (Repl. Vol. 2012). _HN11_[⬆] _Cable_ made clear that, under that statute, a clerk has a duty to collect a filing fee, in the amount set out under the statute, prior to allowing a complaint to be filed. For purposes of imposing the filing fee, _Cable_ concluded

that the "statute makes no distinction regarding the number of plaintiffs joining a particular suit." _Cable, 202 W. Va. at 644, 505 S.E.2d at 707. Cable_ also made the following observations regarding naming multiple plaintiffs in a single complaint:

> Our rules of civil procedure permit multiple plaintiffs to join in a single action, under the appropriate circumstances. Increasingly, numerous parties will join in an action as authorized by Rule 20. The mass litigation that can result imposes _a significant burden, financial and otherwise, on circuit clerks' offices_. However, the West Virginia [***23] Rules of Civil Procedure are silent with regard to the filing fee to be charged when multiple parties choose to join in one action.

_Cable, 202 W. Va. at 644-45, 505 S.E.2d at 707-08_ (citation omitted) (emphasis added).

To relieve the "significant" financial burden imposed on circuit clerks by a complaint naming multiple plaintiffs, _Cable_ noted that circuit courts had the administrative authority to impose additional fees when multiple plaintiffs are joined in a single complaint.

> _HN12_[⬆] Courts have inherent authority to require necessary resources, such as sufficient funds for operating expenses, work space, parking space, supplies, and other material items. In order for a court to invoke use of its inherent power to require resources, the court must demonstrate that such resources are reasonably necessary for the performance of its responsibilities in the administration of justice. Although courts must be cautious not to reach beyond the power of the judicial branch, it is crucial for the judiciary to be able to invoke such power as is reasonably necessary to maintain itself as an independent and equal branch of our government. Syl. pt. 3, _State ex rel. Lambert v. Stephens, 200 W. Va. 802, 490 S.E.2d 891 (1997)_.

_Cable, 202 W. Va. at 645, 505 S.E.2d at 708_. Recognizing the authority of circuit courts to require resources for the proper administration of [***24] the courts, _Cable_ made the following dispositive holding:

> _HN13_[⬆] A circuit judge or chief judge of a circuit with more than one judge, shall have the authority to enter an administrative order governing when separate filing fees are required and may require additional filing fees in multiple plaintiff cases _until such time as a statewide rule governing filing fees_

---

[25] The Panel also proposed amendments to several other rules, and a recommendation for the adoption of a new rule under the West Virginia Trial Court Rules.

[26] The complaint was mailed to the clerk's office with a single filing fee.

[27] The clerk also refused to file the complaint for another reason that is not relevant in this case.

*in multiple plaintiff cases is promulgated.*

Syl. pt. 3, *Cable, 202 W. Va. 638, 505 S.E.2d 701* (emphasis added). The decision in *Cable* went on to set out the procedure that should be followed when multiple plaintiffs are joined in a complaint:

> HN14[⏭] When a circuit court clerk receives a complaint, which lists multiple plaintiffs, complies with the West Virginia Rules of Civil Procedure and is accompanied by the . . . filing fee mandated by *W. Va. Code § 59-1-11(a)* . . ., the clerk must file the complaint. Once such a complaint has been filed, the circuit judge to whom the case has been assigned must determine whether the requirements . . . are met such that additional filing fees should be assessed.

Syl. pt. 4, in part, *Cable, 202 W. Va. 638, 505 S.E.2d 710*.[28]

[*467] [**210]   In sum, the critical factual setting presented to this Court in *Cable* involved a local circuit court rule that prohibited multiple parties from being joined in one complaint. Under the local rule each plaintiff had to file a separate complaint and pay a separate filing fee. Based upon the application of *Rule 20(a)*, this Court rejected the local court rule that barred joinder of multiple plaintiffs in a single complaint. The decision in *Cable* expressly noted that *Rule 20(a)* authorized such joinder. However, we were keenly sensitive to the "significant burden, financial and otherwise, on circuit clerks' offices" as a result of allowing multiple plaintiffs to be joined in one complaint. To alleviate this financial [***26] burden, the Court in

_____

[28] The decision in *Cable* also made reference to the newly established Panel and its potential role in litigation involving multiple plaintiffs joined in a single complaint:

> This Court recently [***25] established a Mass Litigation Panel to, *inter alia*, "develop and implement case management and trial methodologies for mass litigation." *See* Rule 26.05(a), W. Va. T.C.R. for Trial Courts of Record. This panel became fully operational on July 1, 1998. Due to its recent commencement, the panel obviously has not yet had the opportunity to address issues such as the one presently before us. *In the absence of the adoption of a relevant rule proposed by the mass litigation panel, our decision must be guided by W. Va. Code § 59-1-11(a).*

*Cable, 202 W. Va. at 646, 505 S.E.2d at 709* (emphasis added).

*Cable* authorized circuit courts to impose additional filing fees on complaints filed by multiple plaintiffs, pending this Court's adoption of a statewide rule addressing the issue.

The discretion *Cable* gave to trial courts to require additional filing fees, when multiple plaintiffs joined in a single complaint, was addressed by a federal court in *Grennell v. Western Southern Life Insurance Co., 298 F. Supp. 2d 390 (S.D. W. Va. 2004)*. The decision in *Grennell* started out as a civil action filed by 2,286 plaintiffs in the Circuit Court of Mason County, West Virginia. The plaintiffs sued an insurance company and seven individuals who were allegedly agents of the insurer. The single complaint filed by the plaintiffs alleged that the defendants committed various forms of fraud against them in the sale of certain life insurance policies. Although only one complaint was filed, the clerk of the court, acting pursuant to an administrative order of the circuit court, required each "family unit plaintiff" to pay a separate filing fee and be assigned a separate case number. Based upon the definition given to "family unit plaintiff," 1,891 case numbers were assigned, and 1,891 filing fees were charged. Even though the clerk was required to assign multiple case [***27] numbers and charge multiple filing fees, the plaintiffs were not required to file multiple complaints. "According to the Mason County Circuit Court Clerk, multiple case numbers were assigned 'for purposes of assessing and tracking the filing fees . . . and for tracking documents that may apply to individual Plaintiffs' [sic].'" *Grennell, 298 F. Supp. 2d at 392.*

The defendants in *Grennell* removed the claims of 1,317 of the plaintiffs to federal court. The defendants argued that they did not have to remove all the plaintiffs to federal court because the plaintiffs were never properly joined in circuit court, and, therefore, the plaintiffs' claims constituted separate causes of action. Alternatively, the defendants contended that if the claims constituted one action, some of the plaintiffs were fraudulently joined to defeat federal jurisdiction. The plaintiffs argued that the claims should be remanded to circuit court because only one action had been filed. The federal district court agreed with the plaintiffs, in part, in finding that only one civil action was filed even though separate filing fees were charged and separate docket numbers were assigned. The decision addressed the matter as follows:

> Plaintiffs urge this [***28] Court to examine the status of this litigation as it existed in Mason County Circuit Court and to determine that despite certain

administrative actions taken by that court, there existed only one case. . . . According to Plaintiffs, if the Mason County litigation was truly one case, then removal was improper. . . . If as Defendants posit and as explained more fully below Plaintiffs were fraudulently joined in state court, then a finding that the litigation was only a single case will not defeat the diversity jurisdiction of this Court. . . .

. . . .

Defendants argue that "there has been no joinder or consolidation here." The Court is not swayed by this assertion. As noted, the Mason County plaintiffs filed only one complaint to initiate litigation that included over 2,200 individuals. Defendants are correct that the cases were never formally consolidated. Therefore, if Plaintiffs were not joined in one action, the Circuit Court would have required them to file a separate complaint on behalf of each plaintiff. Defendants also point out that [*468] [**211] Plaintiffs were required to pay multiple filing fees. As discussed, however, the Mason County Circuit Court Clerk characterizes these as "supplemental [***29] filing fees." This description of the fees supports Plaintiffs' argument that the litigation involved something other than 1,891 separate original actions. . . . The Court therefore finds that Defendants have not met their burden of demonstrating that the Mason County Circuit Court litigation involved non-joined plaintiffs.[29]

*Grennell, 298 F. Supp. 2d at 393-95.*

**HN15[**⬆**]** In the final analysis, *Grennell* supports the proposition that, under the authority of *Cable*, multiple plaintiffs can join in a single complaint, even though they are charged separate filing fees and assigned separate docket numbers.

**2. Joining multiple plaintiffs in one complaint under Rule 3(a).** As previously mentioned, the Panel *sua sponte* determined that the two cases referred to it by the Chief Justice would be treated substantively as twenty-five separate civil actions. The Panel's order addressed the matter as follows:

> [T]he Panel ORDERS the 25 civil actions filed in the Zoloft Litigation to be treated as separate civil actions. The Panel notes . . . that Rule 3(a) is, on its face, a substantive rule of civil procedure, not an

"administrative rule."

We respectfully disagree [***30] with the Panel's interpretation of Rule 3(a).

To begin, the relevant language in Rule 3(a) that was relied upon by the Panel was incorporated into the rule in 2008. The text of Rule 3(a) provides as follows:

> **HN16[**⬆**]** (a) Complaint. A civil action is commenced by filing a complaint with the court. *For a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court.*

(Emphasis added). The italicized language was added in 2008. The Panel's order states that it proposed this amendment to the Court with the intent that "[e]ach separately assigned civil action number constitutes a separate civil action for any and all substantive purposes, as opposed merely for administrative purposes, such as fee collection." The Respondents have argued that "[t]he Panel's unique role as the author of the rule and the judicial tribunal charged with applying it to mass-tort scenarios makes the Panel especially well-suited to interpret the rule's meaning and purpose." Both the Panel and the Respondents overlook the fact that the Panel's [***31] purported intent in recommending the adoption of Rule 3(a) is inconsistent with *Cable* and *Rule 20(a)*.

Simply put, this Court did not adopt the amendment to Rule 3(a) for the purpose articulated by the Panel. **HN17[**⬆**]** This Court's intent behind Rule 3(a) was expressly set out in *Cable*. As pointed out previously, the decision in *Cable* rejected a local circuit court rule that barred joinder of plaintiffs in a single complaint. *Cable* approved of such joinder and authorized circuit courts to assess separate filing fees in those circumstances. The Panel's interpretation of Rule 3(a) resurrects the local circuit court rule that this Court rejected in *Cable* and, in effect, implicitly overrules *Cable*.

It is obvious from the wording of Rule 3(a) that multiple plaintiffs may join in a single complaint. The relevant language in the rule states: "[f]or a complaint naming more than one individual plaintiff[.]" This language clearly implies that a complaint may name multiple persons as plaintiffs in a single complaint. If this Court intended the result argued by the Panel, we could have

---

[29] The *Grennell* Court went on to find that the plaintiffs were fraudulently joined to defeat federal jurisdiction.

233 W. Va. 457, *468; 759 S.E.2d 200, **211; 2014 W. Va. LEXIS 575, ***31

achieved that result by fashioning an amendment that read: "No complaint shall name more than one individual plaintiff, unless they are related by marriage, a derivative or fiduciary [***32] relationship." Rule 3(a) was not drafted to achieve this result. *HN18*[⬆] All that Rule 3(a) was [*469] [**212] intended to do was to attach a separate filing fee and record keeping docket number for multiple persons, not related by marriage, a derivative or fiduciary relationship, who are joined as plaintiffs in a complaint.

In its brief filed in this matter, the Panel also argued that the definition of mass litigation provided by Rule 26.04(a)(2) supports its decision to treat the two cases as twenty-five separate actions. The Panel points out that Rule 26.04(a)(2) has defined mass litigation to mean "[t]wo (2) or more *civil actions* pending in one or more circuit courts . . . involving common questions of law or fact in 'personal injury mass torts' implicating numerous claimants in connection with widely available or mass-marketed products and their manufacture, design, use, implantation, ingestion, or exposure[.]"[30] (Emphasis added). The Panel contends that, under the rule, the phrase "civil actions" has a different meaning

---

[30] The full definition of "Mass Litigation" is provided under Rule 26.04(a) as follows:

> "Mass Litigation" Two (2) or more civil actions pending in one or more circuit courts: (1) involving common questions of law or fact in mass accidents or single catastrophic events in which a number of people are injured; or (2) involving common questions of law or fact in "personal injury mass torts" implicating numerous claimants in connection with widely available or mass-marketed products and their manufacture, design, use, implantation, ingestion, or exposure; or (3) involving common questions of law or fact in "property damage mass torts" implicating numerous claimants in connection with claims for replacement or repair of allegedly defective products, including those in which claimants seek compensation for the failure of the product to perform as intended with resulting damage to the product itself or other property, with or without personal injury overtones; or (4) involving common questions of law or fact in "economic loss" cases implicating numerous claimants [***34] asserting defect claims similar to those in property damage circumstances which are in the nature of consumer fraud or warranty actions on a grand scale including allegations of the existence of a defect without actual product failure or injury; or (5) involving common questions of law or fact regarding harm or injury allegedly caused to numerous claimants by multiple defendants as a result of alleged nuisances or similar property damage causes of action.

than the term "complaint." According to the Panel, "Mass Litigation is not determined by the number of complaints filed. It is determined by the number of civil actions pending in one or more circuit courts." The Panel failed to cite any authority [***33] to support its contention that, in essence, one complaint can be composed of twenty-five civil actions. We are not persuaded by the Panel's analysis.

*HN19*[⬆] "[A] complaint is synonymous with . . . a civil action." *Cooley v. Zewe, No. 11-99 Erie, 2012 U.S. Dist. LEXIS 180852, 2012 WL 6677885, at *3 (W.D. Pa. Dec. 21, 2012)* (internal quotations and citation omitted). Moreover, "[a] 'civil action' has been defined as an [a]ction brought to enforce, redress, or protect private rights." *Estate of Johnson v. Randall Smith, Inc., 135 Ohio St. 3d 440, 2013-- Ohio -1507, 989 N.E.2d 35, 39 (Ohio 2013). See Derderian v. Essex Ins. Co., 44 A.3d 122, 128 (R.I. 2012)* ("[A] 'civil action' is defined as [a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation."). A civil action brought to redress an injury is embodied in the complaint. If there is no complaint, there is no civil action. In other words, the filing of a complaint, regardless of how many plaintiffs are joined, is but one civil action. While it is true there may be many theories set out in a complaint, this does [***35] not alter the fact that only one civil action is commenced through the filing of one complaint. The number of complaints filed determines the number of civil actions filed. Consequently, we do not accept the Panel's distinction between a civil action and a complaint.

Further, if this Court had sought to achieve the Panel's interpretation of Rule 3(a), we necessarily would have had to abolish *Rule 20(a)*. As previously discussed in this opinion, *Rule 20(a)* expressly permits multiple persons to "join in one action as plaintiffs" under specified conditions. The Respondents contend that the Panel's interpretation of Rule 3(a) works in harmony with *Rule 20(a)* because "claims of unrelated plaintiffs must begin as separate cases, and a court can then consolidate those cases if the standard for joinder is satisfied." To achieve the result argued by the Respondents would require ignoring the clear language in Rule 3(a) that states that a complaint may "nam[e] more than one individual plaintiff[.]" This language does not require unrelated plaintiffs [*470] [**213] to file individual complaints and thereafter seek joinder under *Rule 20(a)*. *HN20*[⬆] It is black letter law that when plaintiffs are initially joined in a complaint, there is no requirement that a separate motion for joinder be [***36] made under *Rule 20(a). See Grennell v.*

233 W. Va. 457, *470; 759 S.E.2d 200, **213; 2014 W. Va. LEXIS 575, ***36

*Western Southern Life Ins. Co., 298 F. Supp. 2d at 395* ("Defendants also note that no motion for joinder was made in the Circuit Court action. Under both West Virginia and federal procedural rules, however, no such motion is required where, as in this case, multiple parties are joined at the time of the filing of a complaint.").[31]

In view of the foregoing discussion, [***37] we now make clear and hold that *HN21*[⬆] Rule 3(a) of the West Virginia Rules of Civil Procedure provides that "[f]or a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court." Rule 3(a) is an administrative fee and record keeping provision. The use of multiple case docket numbers is for the purpose of assessing and tracking filing fees, and for tracking documents that may apply to individual plaintiffs. Rule 3(a) does not provide authority for severing a complaint substantively into two or more separate civil cases.

The holding reached in this case also has been reached by two federal district courts. In the previously mentioned federal case involving the eighteen plaintiff families, the Respondents herein argued "that because the state court separated Plaintiffs' claims into distinct case numbers, and charged separate filing fees for each case, the claims are not properly joined." *J.C. ex rel. Cook v. Pfizer, Inc., 2012 U.S. Dist. LEXIS 136791, 2012 WL 4442518, at *2.* The district judge rejected this argument as follows:

> Defendants offer no authority . . . for the proposition that Rule 3(a) was meant to have the rather severe substantive [***38] effect of prohibiting all unrelated persons from proceeding with a mass claim in West Virginia state courts. Instead, it seems more likely that the changes to Rule 3(a) were intended to alter the administration of mass claims by the state courts. Plaintiffs provide the affidavit of the Clerk of the Wayne County Circuit Court . . . stating that Plaintiffs in this matter were separated by the state court as directed by Rule 3(a), but that they were not required to file separate complaints, were not considered separate cases, and were all assigned to the same judge. A single affidavit may not be dispositive on the question of how to interpret a state rule of civil procedure, but in this case, it illustrates the principle evident from the changes to Rule 3(a). . . : administrative separation of claims in state court does not determine the propriety of joinder in federal court. Defendants have not met their burden of demonstrating that Plaintiffs' claims were not properly joined because of case processing practices in Wayne County Circuit Court.

*J.C. ex rel. Cook v. Pfizer, Inc., 2012 U.S. Dist. LEXIS 136791, 2012 WL 4442518, at *3.*

In the second federal case, *Almond v. Pfizer Inc., No. 1:13-CV-25168, 2013 U.S. Dist. LEXIS 178991, 2013 WL 6729438 (S.D. W. Va. Dec. 19, 2013),* the district court addressed the meaning of our Rule 3(a). In *Almond,* over thirty-six plaintiffs [*471] [**214] filed a single [***39] complaint in the McDowell County Circuit Court against Pfizer, a Respondent in this case. The plaintiffs alleged that they developed diabetes as a result of taking the defendant's drug called Lipitor. The defendant removed the claims of thirty-six of the plaintiffs to a federal district court. One of the arguments made by the defendant in the federal litigation was that, under our Rule 3(a), the plaintiffs had to be treated substantively as having filed thirty-six separate complaints. The plaintiffs argued that only one complaint was filed in state court and that the case should be remanded back to state court. The district judge, relying in part on the decision in *J.C. ex rel. Cook v. Pfizer, Inc.,* agreed with the plaintiffs as follows:

---

[31] Under the proper circumstances, severance of parties properly joined under *Rule 20(a)* may be achieved through Rule 21 of the *West Virginia Rules of Civil Procedure. Rule 21* provides, in relevant part, that "[a]ny claim against a party may be severed and proceeded with separately." It has been recognized that "Rule 21 may . . . be invoked to sever the claims of parties otherwise permissively joined pursuant to *Rule 20(a)* for convenience, to avoid prejudice, or to promote the expeditious resolution of the litigation." *Dantzler-Hoggard v. Graystone Acad. Charter Sch., No. 12-0536, 2012 U.S. Dist. LEXIS 79163, 2012 WL 2054779, at *10 (E.D. Pa. June 6, 2012)* (internal quotations and citation omitted). See *Robinson v. Dart, No. 13C1502, 2014 U.S. Dist. LEXIS 7696, 2014 WL 222711, at *5 (N.D. Ill. Jan. 21, 2014)* ("[P]laintiffs are properly joined under *Rule 20(a),* the court may still sever a party pursuant to Rule 21[.]"); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg., No. 10-CV-419-GPC (WVG), 2013 U.S. Dist. LEXIS 82089, 2013 WL 2631333, at *2 (S.D. Cal. June 11, 2013)* ("A court may sever a trial under Rule 21 even if the parties are properly joined under *Rule 20(a).*"); *Gsouri v. Farwest Steel Corp., No. C105769BHS, 2011 U.S. Dist. LEXIS 54089, 2011 WL 1827343, at *2 (W.D. Wash. May 12, 2011)* ("A court may, in its discretion, sever a trial under Rule 21, even if the parties are properly joined under *Rule 20(a).*").

233 W. Va. 457, *471; 759 S.E.2d 200, **214; 2014 W. Va. LEXIS 575, ***39

In considering this precise issue in a case with the same defendant, represented by the same counsel, setting forth the same arguments, Judge Chambers interpreted Rule 3(a) as "intended to alter the administration of mass claims by the state courts" and found that it was not "meant to have the rather severe substantive effect of prohibiting all unrelated persons from proceeding with a mass claim in West Virginia state courts." *J.C. ex rel. Cook v. Pfizer, Inc., 2012 U.S. Dist. LEXIS 136791, 2012 WL 4442518, 3 (S.D.W. Va.2012)* (Chambers, J.).

....

The Plaintiffs in the [***40] present action properly joined their claims in a single case, regardless of the administrative filing requirements of the state court. This Court finds Judge Chambers' reasoning persuasive with respect to the application of *West Virginia Rule of Civil Procedure 3(a)*, and further finds that the rule does not mandate that federal courts treat all plaintiffs in a joined case, whether under a single civil action number or not, independently for the purposes of remand analysis. It is undisputed that four of the Plaintiffs named in the complaint and the amended complaint are New York citizens, and that the Defendant has its principal place of business in New York and is, therefore, considered a New York citizen for federal diversity jurisdiction purposes. As such, the four New York plaintiffs, parties to the single complaint, defeat diversity jurisdiction.

*Almond v. Pfizer Inc., 2013 U.S. Dist. LEXIS 178991, 2013 WL 6729438, at *3-4.*[32]

---

[32] Some federal courts similarly require separate filing fees for multiple prisoners that are joined in a single complaint. *See Schuenke v. Wisconsin Dep't. of Corrs., No. 13-CV-865-bbc, 2014 U.S. Dist. LEXIS 30701, 2014 WL 905529, at *1 (W.D. Wis. Mar. 7, 2014)* ("Although plaintiffs have joined their claims in one complaint, each is bringing an action subject to the 1996 Prison Litigation Reform Act and each must pay the full $350 fee for filing the action."); [***41] *Ross v. Hardy, No. 12 C1069, 2013 U.S. Dist. LEXIS 33621, 2013 WL 951164, at *1 (N.D. Ill. Mar. 12, 2013)* ("Although *Fed. R. Civ. P. 20(a)* permits co-plaintiffs to bring a jointly filed complaint, the Prison Litigation Reform Act holds each plaintiff responsible for payment of a full filing fee, which is $350. Accordingly, each inmate who seeks to be a part of this suit must . . . prepay the $350 filing fee."). Nevertheless, federal courts do not treat a complaint filed by multiple prisoners as separate complaints for each prisoner merely because each prisoner is assessed a filing fee. Our research also found that the courts of Louisiana

### C. The Authority of the Panel to Vacate an Administrative Order Issued by the Chief Justice

Although we have determined that the Panel incorrectly interpreted Rule 3(a), we are compelled to address the issue of whether the Panel had the authority to vacate [*472] [**215] the Chief Justice's order that found that these actions constituted two cases. *HN22*[⬆] As a general matter, the Chief Justice of this Court has the constitutional authority to issue administrative orders controlling the courts in this State. *See W. Va. Const. III, § 3* ("The chief justice shall be the administrative head of all the courts."). *See also W. Va. Code § 50-1-16* (1982) (Repl. Vol. 2008) ("Rules promulgated by the judge of a circuit court, or the chief judge thereof, pursuant to the provisions of this chapter shall be subordinate and subject to the rules of the Supreme Court [***43] of Appeals or the orders of the chief justice thereof."); *W. Va. Code § 51-2A-7(b)* (2013) (Supp. 2013) "Local [family court] administrative rules are subordinate and subject to the rules of the Supreme Court of Appeals or the orders of the chief justice.").

On December 2, 2013, the Petitioners filed a motion in the circuit court to have the instant two cases referred to the Panel. The procedure for seeking a referral to the Panel is set out under Rule 26.06(a)(3) of the Mass Litigation Rules:

> *HN23*[⬆] The motion shall be served on all the parties, including those parties not represented by

---

have the authority to assess separate filing fees against each plaintiff named in a complaint. *See Adams v. Airco Welding Prods. Co., 739 So. 2d 375, 377 (La. Ct. App. 1999)* ("[T]he fees schedule of this court requires each plaintiff to pay the full filing fees in petitions of multiple plaintiffs unless the lawsuit arises from one single incident, such as an automobile accident."). Moreover, it appears that some state courts in Mississippi have required multiple plaintiffs joined in a single complaint pay separate filing fees. However, the Mississippi Supreme Court found that no statutory authority allowed for the imposition of separate filing fees. *See Hinds Cnty. Bd. of Supervisors v. Abnie, 934 So. 2d 996, 999 (Miss. 2006)* ("As succinctly stated by this Court's Order of September 4, 2003, the Legislature established the [***42] statutory fees allowed to be charged by clerks, and 'no more.' In the matter sub judice, the Circuit Clerk was not at liberty to assess and collect administrative costs and separate filing fees for each plaintiff, as it was contrary to state law, specifically *Miss. Code Ann. Section 25-7-1* and **Section 25-7-13**. Plaintiffs were improperly and impermissibly required to pay filing fees and administrative costs in excess of the statutorily authorized amount.").

counsel, all judges in actions which are the subject of the motion, and the Panel's Mass Litigation Manager. Any party shall have twenty (20) days after the motion is filed to file a reply memorandum stating its position and opposition, if any. Any affected judge may file a reply memorandum within twenty (20) days thereafter.

HN24[↑] This rule permits any party or affected judge to file a response to the motion.

The motion filed by the Petitioners stated that "[t]his litigation is subject to coordinated case management as mass litigation before the West Virginia Mass Litigation Panel *because it is two Complaints* involving common questions of law and fact[.]" (Emphasis [***44] added). The Respondents filed a response to the motion. The response purported to support the referral motion; but, it actually was inconsistent with the motion. The response memorandum addressed two separate issues. First, the response argued that the complaint filed by the original nineteen plaintiff families should not be referred because those plaintiffs were going to be removed to federal court.[33] Second, the response contended that the case involving the remaining six plaintiff families should be referred to the Panel because their complaint was actually six separate cases.

After the motion and response were filed in circuit court, Rule 26.06(c)(1) outlined the next step in the process. HN25[↑] That rule provides that the motion for referral and all reply memoranda must be submitted for review to the Chief Justice of this Court. This provision of the rule provides the Chief Justice with two options:

> Upon review of the motion and reply memoranda, the Chief Justice may act directly upon the motion or *may direct the Panel to conduct a hearing and make recommendations concerning [***45] coordinated or consolidated proceedings under this rule.*

Rule 26.06(c)(1) (emphasis added). This provision gives the Chief Justice discretion to ask the Panel to render a recommendation on the referral motion.[34] This provision

is an important limitation on the authority of the Panel. The provision states clearly that if the Chief Justice asks the Panel to review the referral motion, the Panel can make only a recommendation to the Chief Justice. More importantly, it is only at this stage that the Mass Litigation Rules allow the Panel to have direct input into whether cases are proper for litigation before the Panel.[35]

[*473] [**216]   In the instant case, the Chief Justice did not ask the Panel to review the referral motion. On January 14, 2014, the Chief Justice entered an order transferring the two consolidated cases to the Panel.[36] The transfer order stated that "[t]he Chief Justice has determined that such Motion to Refer should be granted and that it is appropriate to transfer *all cases identified in said Motion* to the Mass Litigation Panel." (Emphasis added). Only two cases were identified in the motion, and therefore, only two cases were transferred. Thus, the Chief Justice rejected the position of the Respondents that the complaint filed by the six plaintiff families should be referred to the Panel as six separate cases and that the remaining nineteen plaintiff families should not be referred to the Panel.

After the Chief Justice entered the order referring the two cases, the Panel *sua sponte* decided that the Chief

---

submit findings of fact and a recommendation to the Chief Justice.

[35] See. e.g., *In re Flood Litig., 216 W. Va. 534, 540 n.3, 607 S.E.2d 863, 869 n.3 (2004)* ("The Chief Justice of this Court originally received a motion . . . to refer to the Mass Litigation Panel certain litigation pending before seven circuit courts. This motion was referred to the Honorable Gary L. Johnson, . . . . as a member of the Mass Litigation Panel, for the purpose of conducting a hearing [***46] and submission of findings of fact and a recommendation to the Chief Justice regarding the motion to refer. Judge Johnson essentially concluded that the issues raised in the flood litigation cases could be more efficiently and fairly resolved by referral to the Mass Litigation Panel. By order of May 16, 2002, the Chief Justice granted the motion to refer as recommended by Judge Johnson.").

[36] The authority of the [***47] Chief Justice to enter the order is provided by Rule 26.06(c)(3) as follows:

> The Chief Justice, whether acting directly upon the motion or upon the recommendation of the Panel member or members, shall enter an order either granting or denying the motion, or providing modified relief. The order shall be filed with the Clerk of the Supreme Court of Appeals who shall send a copy of the order to the Panel Chair and to the clerk(s) of the circuit court(s) where the actions are pending for service on all parties.

---

[33] The federal court rejected the Respondents' attempt to have the complaint of the nineteen plaintiff families removed to federal court.

[34] The procedure the Panel must follow is provided by Rule 26.06(c)(2):

> (2) If the Chief Justice directs, a Panel member or members shall hold a hearing to receive evidence and entertain arguments by the parties or any judge, and shall

Justice actually referred twenty-five cases. This determination, in effect, vacated the Chief Justice's referral order. The Panel's order stated that in view of its interpretation of Rule 3(a), "any other orders that are inconsistent with the Panel's prior application of Rule 3(a), as plainly written, are VACATED." HN26[↑] There is no provision in the Mass Litigation Rules that gives the Panel the authority to vacate an order by the Chief Justice.

The Respondents contend in a footnote of their brief that Rule 26.05(f) of the Mass Litigation Rules is the authority for the Panel's decision. HN27[↑] Rule 26.05(f) states that the Panel can "take such [***48] action as is reasonably necessary and incidental to the powers and responsibilities conferred by this rule or by the specific directive of the Chief Justice."37 Rule 26.05, in its entirety, allows the Panel to implement procedural devices for efficiently handling cases referred by the Chief Justice. However, we do not find that this provision authorizes the Panel to vacate an order of the

---

37 Rule 26.05 provides in full as follows:

HN28[↑] The Panel shall:

(a) develop and implement case management and trial methodologies to fairly and expeditiously resolve Mass Litigation referred to the Panel by the Chief Justice;

(b) preside in Mass Litigation or proceedings therein referred by the Chief Justice;

(c) request the assignment by the Chief Justice of additional active or senior status circuit court judges to assist the Panel in resolving Mass Litigation or proceedings therein as needed, and provide assistance and guidance to such judges when assigned;

(d) recommend for adoption by the Supreme Court of Appeals rules for conducting the business of the Panel as needed;

(e) report periodically to the Chief Justice concerning the Panel's activities;

(f) take such action as is reasonably necessary and incidental to [***49] the powers and responsibilities conferred by this rule or by the specific directive of the Chief Justice; and

(g) develop and implement plans for central organization, including, but not limited to staffing, record keeping, and other assistance for the management of Mass Litigation, the transfer and storage of Mass Litigation court files to the appropriate circuit, the implementation of appropriate technology, and the adoption of necessary rules and procedures.

Chief Justice.

Moreover, HN29[↑] there is no provision in the Mass Litigation Rules that expressly or implicitly gives the Panel discretion to convert two cases referred to it by the Chief Justice into twenty-five separate cases. In fact, the Mass Litigation Rules are careful to expressly limit the ability of the Panel to substantively add more cases. For example, under Rule 26.09(b), "[i]f the initial order of the Chief Justice granting a Motion to Refer to the Mass Litigation Panel does not authorize the Panel to transfer and join with the existing Mass Litigation any subsequently filed [*474] [**217] actions, the procedure under Rule 26.06 shall be followed." Rule 26.09(b) makes clear that, absent express authorization by the Chief Justice, the Panel cannot add new cases to its litigation.38

The Mass Litigation Panel does not have authority to vacate an order of the Chief Justice of the West Virginia Supreme Court of Appeals. Therefore, HN30[↑] when an order of the Chief Justice transfers cases to the Panel, the Panel has no authority to separate the cases under Rule 3(a) of the West Virginia Rules of Civil Procedure for the purpose of substantively increasing the number of cases that were transferred.

Although our holding recognizes limitations on the authority of the Panel, we wish to make clear that we support the Panel's need to have some discretion in processing the numerous issues that necessarily flow from mass litigation cases. In this regard, we wish to be clear in also recognizing that HN31[↑] the Panel has the authority [***51] to implement procedural mechanisms to address the numerous individual and collective unique issues that are inherent in mass litigation. See In re Tobacco Litig., 218 W. Va. 301, 303 n.1, 624 S.E.2d 738, 740 n.1 (2005) ("'A creative, innovative trial management plan developed by a trial court which is designed to achieve an orderly, reasonably swift and efficient disposition of mass liability cases will be approved so long as the plan does not

---

38 Another example [***50] of the restraint placed on the Panel's authority to alter the number of cases it has involves class actions. Rule 26.10 of the Mass Litigation Rules addresses the procedure to be followed when cases referred to the Panel become the subject of a class action in another proceeding. This rule states that "[i]f any Mass Litigation transferred to the Panel is later certified as a class action by any court pursuant to Rule 23, W. Va. R. Civ. P., the Panel may request the Chief Justice transfer the Mass Litigation from the Panel to the appropriate circuit court."

trespass upon the procedural due process rights of the parties." (quoting Syl. pt. 3, *State ex rel. Appalachian Power Co. v. MacQueen, 198 W. Va. 1, 479 S.E.2d 300 (1996).* Our Rules of Civil Procedure provide a host of mechanisms for the Panel to use in efficiently processing mass litigation cases. We encourage the Panel to be innovative within the meaning and spirit of our rules.[39]

For example, nothing prevents the Panel from using procedural mechanisms to procedurally divide the plaintiffs and defendants into any number of relevant groups, so long as no substantive division occurs as was done in this case. Moreover, to the extent that some plaintiffs may be subject to dispositive motions based upon such issues as statutes of limitation or summary judgment, the Panel also is free to devise a scheme that permits the defendants to raise those issues and have them addressed separately. In addition to these examples, the Panel also may craft solutions to address other procedural issues that may arise.

Furthermore, a good source for suggestions on how to efficiently handle complex mass litigation issues is the Federal Judicial Center's *Manual for Complex Litigation,* Fourth (2004) ("hereinafter the Manual").[40] Federal courts "often look to the Manual as a guidepost in crafting procedures that will aid all parties involved in both the progression and adjudication of complex cases[.]" *Dunlavey v. Takeda Pharms. Am., Inc., Nos. 6:12-CV-1162, et al., 2012 U.S. Dist. LEXIS 120897, 2012 WL 3715456, at *1 (W.D. La. Aug. 23, 2012).* For example, the Manual suggests courts designate attorneys to act on behalf of other counsel [***53] and parties in addition to their own clients. In fact, the Manual permits the court to appoint well-seasoned, experienced mass litigation lawyers to spearhead the

litigation even though they may, or may not, be counsel in the pending litigation. The Manual has identified four categories of counsel: liaison counsel,[41] [*475] [**218] lead counsel,[42] trial counsel,[43] and committees of counsel.[44] The Manual provides some excellent ideas

---

[41] The Manual describes the role of "liaison counsel" as follows:

> Liaison counsel. Charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling [***54] conflicts. Liaison counsel will usually have offices in the same locality as the court. The court may appoint (or the parties may select) a liaison for each side, and if their functions are strictly limited to administrative matters, they need not be attorneys.

Manual, § 10.221.

[42] The Manual describes the role of "lead counsel" as follows:

> Lead counsel. Charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

Manual, § 10.221.

[43] The Manual describes the role of "trial counsel" as follows:

> Trial counsel. Serve as principal attorneys at trial for the group and organize and coordinate the work of the other attorneys on the trial team.

Manual, § 10.221.

[44] The Manual describes the role of "committees of [***55] counsel" as follows:

> Committees of counsel. Often called steering committees, coordinating committees, management committees, executive committees, discovery committees, or trial teams. Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making. The court or lead

---

[39] Some of the concerns raised by the Panel in its brief involve out-of-state litigants filing complaints in this state and naming one West Virginia resident as a plaintiff in order to defeat federal jurisdiction. There are procedural mechanisms for removing improperly or fraudulently joined plaintiffs. *See Grennell, 298 F.Supp. 2d at 397* ("[M]isjoinder is present, and severance appropriate, when the claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact."). Rule 3(a) was not [***52] created to address this issue.

[40] The Manual can be found at: http://www.fjc.gov/public/pdf.nsf/lookup/MCL40000.pdf/$file/MCL40000.pdf (last visited May 14, 2014).

233 W. Va. 457, *475; 759 S.E.2d 200, **218; 2014 W. Va. LEXIS 575, ***55

for handling such issues as discovery disputes, privilege claims and protective orders, handling documents, discovery of computerized data, depositions, interrogatories, stipulations, and requests for admission.

Finally, to the extent that the Panel was attempting to find a way to efficiently manage the two cases referred by the Chief Justice, it simply was not appropriate to do so by entering a ruling that effectively vacated the Chief Justice's order. A reservoir of information and procedural devices exist to assist the Panel in bringing the two cases to a fair and just resolution. As we have noted, we recognize the Panel's authority to manage cases referred to it and its ability to craft creative solutions to problems [***56] it may encounter in its consideration of multiple cases. However, we reiterate that such authority granted to the Panel does not exceed that vested in the Chief Justice of this Court.

parties were permissibly joined into one action under Rule 20. The Panel's stated intent in proposing what became the 2008 amendment to Rule 3(a) clearly exceeded what was contemplated by this Court in Cable,[1] as the majority has fully [*476] explained. [**219] While the Panel urges us to interpret Rule 3(a) as a substantive rule creating multiple civil actions[2] and warns that any other interpretation could result in West Virginia from becoming a "dumping ground for foreign lawsuits," the fact remains that there are established tools to prevent [***57] such an event from occurring. Challenges, such as a motion to dismiss based on forum non conveniens under _West Virginia Code § 56-1-1a_ (2012),[3] or a motion to dismiss fraudulently or improperly joined parties,[4] are available to litigants. In short, misjoined claims and parties may still be addressed through appropriate procedural and

## IV.

## CONCLUSION

In view of the foregoing, we grant the Petitioners' request for a writ of prohibition and prohibit enforcement of the Panel's order of March 11, 2014, that separated the two cases referred by the Chief Justice into twenty-five civil cases.

Writ granted.

**Concur by:** LOUGHRY

# Concur

LOUGHRY, Justice, concurring:

I agree with the majority's holdings regarding Rule 3(a) and Rule 20 of the West Virginia Rules of Civil Procedure, but write separately to emphasize that the majority's opinion should not be read as diminishing the avenues available to litigants for challenging whether

---

counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately. Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses.

Manual, § 10.221.

---

[1] I have reviewed the file maintained by this Court regarding the amendment to Rule 3(a) in 2008, and its contents confirm that the purpose of the amendment was to allow for the collection of multiple filing fees where one complaint is filed naming multiple, unrelated plaintiffs, as discussed in Cable.

[2] The Panel forecasted its interpretation of Rule 3(a) in its Findings of Fact and Recommendation of the Mass Litigation Panel filed in Abbott v. Earth Support Services d/b/a/ Micon, Inc., et al. (Civil Action No. 08-C-138, Circuit Court of Wyoming County), wherein in it explained that had the Abbott case been filed after the 2008 amendment to Rule 3(a), it would have been "99 separate civil actions instead of one civil action with 99 plaintiffs[]" and would have met the definition of mass litigation under Trial Court Rule 26.04(a). Similarly, this Court's interpretation of Rule 3(a) was forecasted in the case at bar when the [***58] Chief Justice denied the defendants' motion to refer this litigation to the Panel on the basis that

233 W. Va. 457, *476; 759 S.E.2d 200, **219; 2014 W. Va. LEXIS 575, ***58

substantive challenges.[5]

there was only one case; although there were nineteen plaintiff families who had been assigned multiple civil action numbers by the Wayne County Circuit Court Clerk. It was only after a second complaint was filed by additional plaintiffs that the Chief Justice granted the subsequent motion to refer to the Panel, which was filed by the plaintiffs.

[3] *West Virginia Code § 56-1-1a* provides, in part, as follows:

> a) In any civil action if a court of this state, upon a timely written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action, or dismiss any plaintiff: Provided, That the plaintiff's choice of a forum is entitled to great deference, but this preference may be diminished when the plaintiff is a nonresident and the cause of action did not arise in this state. In determining whether to grant a motion to stay or dismiss an action, or dismiss any plaintiff under the [***59] doctrine of forum non conveniens, the court shall consider:
>
> (1) Whether an alternate forum exists in which the claim or action may be tried;
>
> (2) Whether maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;
>
> (3) Whether the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;
>
> (4) The state in which the plaintiff(s) reside;
>
> (5) The state in which the cause of action accrued;
>
> (6) Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state. Factors relevant to the private interests of the parties include, but are not limited to, the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of a view of the premises, if a view would be appropriate [***60] to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Factors relevant to the public interest of the state include, but are not limited to, the administrative difficulties flowing from court congestion; the interest in having localized controversies decided within the state; the avoidance of unnecessary problems in conflict of laws, or in the application of

I also agree with the majority that Rule 3(a) cannot be interpreted in a manner that essentially nullifies Rule 20, which provides [*477] [**220] that "[a]ll persons may join in one action as plaintiffs . . . ." While I appreciate the Panel's argument regarding the manner in which Rule 3(a) dovetails with Trial Court Rule 26.04(a)(2) as it pertains to "civil actions," the Panel failed to address permissive joinder under Rule 20 in its brief filed in this Court, even though the interplay between Rule 20 and Rule 3(a) was the focus of the other parties' arguments in this matter. In fact, the Panel's lack of discussion in this regard is arguably an implicit recognition of the conflict between Rule 20 and the Panel's interpretation of Rule 3(a). Additional rule amendments and revisions may well be necessary to address the Panel's litigation management concerns, but it must be done in a manner that does not affront permissive joinder.

Lastly, I do not understand why the majority felt compelled to recommend the Federal Judicial Center's *Manual for Complex Litigation*, Fourth (2004), to the Panel as a "good source of suggestions on how to efficiently handle complex mass [***62] litigation issues[.]" The majority quotes the federal manual's definitions of "liaison counsel" and "lead counsel," as if these definitions and ideas are a novel concept, when our own Trial Court Rule 26.05 already defines these very terms. And, given the obvious similarities between the definitions of these terms in the federal manual versus our Trial Court Rules, our definitions may well have been based on the definitions in the federal

---

foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty;

7) Whether not granting the stay or dismissal would result in unreasonable duplication or proliferation of litigation; and

8) Whether the alternate forum provides a remedy.

[4] Rule 21 of the West Virginia Rules of Civil procedure provides:

> Misjoinder of parties is not ground for dismissal of an action. Parties maybe dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claims against a party may be severed and proceeded with separately.

[5] Also, as the majority explains, the Panel may use procedural mechanisms to procedurally (but not substantively) divide plaintiffs into relevant groups, or to "devise a scheme" [***61] that permits the defendants to raise assert dispositive motions based on issues such as statute of limitations as to certain plaintiffs.

233 W. Va. 457, *477; 759 S.E.2d 200, **220; 2014 W. Va. LEXIS 575, ***61

manual. Indeed, I am confident that the Panel has utilized this federal manual on many occasions for guidance and "suggestions" in its development of mechanisms and plans for organization and procedure of mass litigation. Consequently, I find the majority's recommendation of this federal manual to the Panel to be unnecessary.

For the reasons set forth above, I respectfully concur in the majority's holdings, as reflected in its opinion.

---

**End of Document**

COPY

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, et al.,
      **Plaintiffs,**

                                                Civil Action No.: 22-C-214

                                                Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      **Defendant.**

---

### PLAINTIFF'S FIRST SET OF COMBINED DISCOVERY TO DEFENDANT CITY OF MORGANTOWN

---

**NOW COMES,** the Plaintiff, Brandon Viola, et al., by and through their undersigned counsel, Teresa C. Toriseva, Esquire, Joshua D. Miller, Esquire, and the law office of Toriseva Law, and pursuant to Rules 33, 34 and 36 of the West Virginia Rules of Civil Procedure hereby serves the following Interrogatories, Requests for Production of Documents and Requests for Admission to be answered separately, under oath, within forty-five (45) days after service hereon.

### INTERROGATORIES

**INTERROGATORY NO. 1:** Please provide a list of all municipal departments, please include:

    a.  The name of each department

    b.  The name of the supervisor or head of each department

    c.  Roster of all employees for each department

**RESPONSE:**


**INTERROGATORY NO. 2:** As to the municipal departments listed in Interrogatory No. 1 please provide as to each department:

    a.  How each department is affected by changes to the employee handbook implemented July 1, 2022

1

b.  A list of any employees that have left each municipal department in the last five years.

**RESPONSE:**

**INTERROGATORY NO. 3:** Please state what the City is doing to fill the multiple vacancies in the Morgantown Police Department.

**RESPONSE:**

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:** Produce rosters for all municipal departments for the past five years.

**RESPONSE:**

**REQUEST NO. 2**: Produce all city council agendas for the past five years.

**RESPONSE:**

**REQUEST NO. 3:** Produce the minutes for all city council meetings for the past five years.

**RESPONSE:**

**REQUEST NO. 4:** Produce the letters of resignation for all civil service employees who have left the employ of the City of Morgantown for the past five years.

**RESPONSE:**

**RESPONSE:** Produce all memos, notes, emails, and internal communications regarding municipal employee recruitment and retention.

**RESPONSE:**

2

**REQUEST NO. 5:** Produce a list of all candidates or applicants that have taken part in any civil testing for the City of Morgantown for the last five years:

**RESPONSE:**

**REQUEST NO. 6:** Provide a list of all current civil service employees and their sick time accrued as of July 1, 2022.

**RESPONSE:**

**REQUEST NO. 7:** Provide a list of all current civil service employees and their vacation time accrued as of July 1, 2022.

**RESPONSE:**

**REQUEST NO. 8:** Provide a list of all current civil service employees and their compensatory leave time accrued as of July 1, 2022.

**RESPONSE:**

**REQUEST NO. 9:** Please provide any contracts, agreements, or memorandum of understanding between West Virginia University and the City of Morgantown as it relates to Morgantown civil service employees working West Virginia University events.

**RESPONSE:**

3

**REQUEST NO. 10:** Please provide any general orders, special orders, memorandum, or other internal communications issued forth from the Chief of the Morgantown Police Department for the past five years.

**RESPONSE:**


**REQUEST NO. 11:** Please provide pay stubs for all Morgantown police officers for the past five year.

**RESPONSE:**


<strong><u>REQUESTS FOR ADMISSIONS</u></strong>

**REQUEST NO. 1**:  Please admit that a police officer's job is hazardous.

_____ ADMIT                    _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 2:** Please admit that prior to July 1, 2022 the City of Morgantown paid Police Officers "hazard pay".

**RESPONSE:**

**REQUEST NO. 3:** Please admit that as of July 1, 2022 the City of Morgantown no longer pays police officers "hazard pay".

_____ ADMIT                    _____ DENY

5

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 4**:  Please admit that the Morgantown Police Department is operating without the number of police officers authorized.

_____ ADMIT                          _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 5**:  Please admit that the .8% cost of living increase is only to cover additional deductions related to the new pay scheme.

_____ ADMIT                          _____ DENY

6

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 6:** Please admit that after the additional deductions are taken the .8% cost of living increase is erased.

_____ ADMIT                    _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 7:** Please admit that more than one Morgantown police officers has resigned in the last two years.

_____ ADMIT                    _____ DENY

7

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 8:** Please admit that prior to July 1, 2022 the City of Morgantown paid police officers' longevity pay.

_____ ADMIT                    _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 9:** Please admit that as of July 1, 2022 the City of Morgantown no longer pays longevity pay to police officers.

_____ ADMIT                    _____ DENY

8

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 10:** Please admit that former Morgantown police officers have resigned to work as police officers in other municipalities and/or other law enforcement agencies/departments.

_____ ADMIT               _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 11:** Please admit that prior to July 1, 2022, the members of the Morgantown Police Department received additional pay to work West Virginia University football games.

_____ ADMIT               _____ DENY

9

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 12:** Please admit that as of July 1, 2022, the City of Morgantown no longer pay police officers additional pay to work West Virginia University football games.

_____ ADMIT _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 13:** Please admit as of August 31, 2022, the Morgantown Police Department was authorized 76 officers.

_____ ADMIT _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 14**:   Please admit currently, the department has only fifty-five 55 officers.

_____ ADMIT                 _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 15**: Please admit there are 4 newly hired officers more than 10 months from working as Policer Officers on their own.

_____ ADMIT                 _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 16**:  Please admit a fully staffed police department increases public safety.

_____ ADMIT                 _____ DENY

If your answer is anything but an unqualified admission, please state your response more fully herein.

**RESPONSE**:

**REQUEST NO. 17**:  Please admit the Morgantown Police Department is not fully staffed with

Police Officers.

        _____ ADMIT         _____ DENY

     If your answer is anything but an unqualified admission, please state your response more

fully herein.

**RESPONSE**:


                           **BRANDON VIOLA**, et al.
                           **BY COUNSEL**

Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

12

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**BRANDON VIOLA, et al.,**
      **Plaintiffs,**

v.

                                             **Civil Action No.:**
                                             **Judge:**

**THE CITY OF MORGANTOWN,**
**a municipal corporation,**
      **Defendant.**

---

### CERTIFICATE OF SERVICE

---

I do hereby certify that a true and correct copy of the foregoing **Plaintiff's First Set of Combined Discovery** was served with the Complaint to the individual listed below via certified mail, postage prepaid, on the 7th day of September, 2022:

**City of Morgantown, a municipal Corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

13

COPY

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
  Plaintiffs,

               Civil Action No.: 22-C-214
               Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
  Defendant.

### NOTICE OF DEPOSITION OF EMILY MUZZARELLI

PLEASE TAKE NOTICE that the undersigned will take the deposition of **EMILY MUZZARELLI** at TORISEVA LAW on **November 8, 2022 at 11:00 a.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

             BRANDON VIOLA, *et al.,*
             BY COUNSEL

             Teresa C. Toriseva, Esq.
             W.Va. Bar ID #6947
             Joshua D. Miller, Esq.
             W.Va. Bar ID #12439
             Michael A. Kuhn, Esq.
             W.Va. Bar ID #13898
             TORISEVA LAW
             1446 National Road
             Wheeling, WV 26003
             Phone (304)238-0066
             Facsimile (304)238-0149
             justice@torisevalaw.com

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**BRANDON VIOLA**, *et al.,*
        **Plaintiffs,**

                                               Civil Action No.:
                                               Judge:

v.

**THE CITY OF MORGANTOWN,**
**a municipal corporation,**
        **Defendant.**

### CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF EMILY MUZZARELLI** was

served with the Complaint to the individual listed below via certified mail, on the 7th day of

September, 2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

 

Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
    Plaintiffs,

                                          Civil Action No.: 22-C-214

                                          Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
    Defendant.

### NOTICE OF DEPOSITION OF A. KIM HAWS

PLEASE TAKE NOTICE that the undersigned will take the deposition of **A KIM HAWS** at TORISEVA LAW on **November 8, 2022 at 9:00 a.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

                                          BRANDON VIOLA, *et al.,*
                                          BY COUNSEL

                                          Teresa C. Toriseva, Esq.
                                          W.Va. Bar ID #6947
                                          Joshua D. Miller, Esq.
                                          W.Va. Bar ID #12439
                                          Michael A. Kuhn, Esq.
                                          W.Va. Bar ID #13898
                                          TORISEVA LAW
                                          1446 National Road
                                          Wheeling, WV 26003
                                          Phone (304)238-0066
                                          Facsimile (304)238-0149
                                          justice@torisevalaw.com



# IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**BRANDON VIOLA**, *et al.,*
    **Plaintiffs,**

                                   **Civil Action No.:**
                                   **Judge:**

**v.**

**THE CITY OF MORGANTOWN,**
**a municipal corporation,**
    **Defendant.**

## CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF A KIM HAWS** was served

with the Complaint to the individual listed below via certified mail, on the 7th day of September,

2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

                                           *Teresa C. Toriseva*
                                           Teresa C. Toriseva, Esq.
                                           W.Va. Bar ID #6947
                                           Joshua D. Miller, Esq.
                                           W.Va. Bar ID #12439
                                           Michael A. Kuhn, Esq.
                                           W.Va. Bar ID #13898
                                           TORISEVA LAW
                                           1446 National Road
                                           Wheeling, WV 26003
                                           Phone (304)238-0066
                                           Facsimile (304)238-0149
                                           justice@torisevalaw.com

COPY

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.*,
      Plaintiffs,

                                  Civil Action No.: 22-C-214

                                  Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

## NOTICE OF DEPOSITION OF BILL KAWECKI

PLEASE TAKE NOTICE that the undersigned will take the deposition of BILL KAWECKI at TORISEVA LAW on **November 8, 2022 at 2:00 p.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

                                      BRANDON VIOLA, *et al.*,
                                      BY COUNSEL

                                      Teresa C. Toriseva, Esq.
                                      W.Va. Bar ID #6947
                                      Joshua D. Miller, Esq.
                                      W.Va. Bar ID #12439
                                      Michael A. Kuhn, Esq.
                                      W.Va. Bar ID #13898
                                      TORISEVA LAW
                                      1446 National Road
                                      Wheeling, WV 26003
                                      Phone (304)238-0066
                                      Facsimile (304)238-0149
                                      justice@torisevalaw.com

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**BRANDON VIOLA,** *et al.,*
    **Plaintiffs,**

                                  **Civil Action No.:**
                                  **Judge:**

**v.**

**THE CITY OF MORGANTOWN,**
**a municipal corporation,**
    **Defendant.**

### CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF BILL KAWECKI** was served

with the Complaint to the individual listed below via certified mail, on the 7th day of September,

2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
      Plaintiffs,

                                         Civil Action No.:  22-C-214

                                         Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

### NOTICE OF DEPOSITION OF DAVE HARSHBARGER

**PLEASE TAKE NOTICE** that the undersigned will take the deposition of **DAVE HARSHBARGER** at TORISEVA LAW on **November 9, 2022 at 2:00 p.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

                                         BRANDON VIOLA, *et al.,*
                                         BY COUNSEL,

                                         Teresa C. Toriseva, Esq.
                                         W.Va. Bar ID #6947
                                         Joshua D. Miller, Esq.
                                         W.Va. Bar ID #12439
                                         Michael A. Kuhn, Esq.
                                         W.Va. Bar ID #13898
                                         TORISEVA LAW
                                         1446 National Road
                                         Wheeling, WV 26003
                                         Phone (304)238-0066
                                         Facsimile (304)238-0149
                                         justice@torisevalaw.com

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**BRANDON VIOLA,** *et al.,*
      **Plaintiffs,**

                                         **Civil Action No.:**
                                         **Judge:**

v.

**THE CITY OF MORGANTOWN,**
a municipal corporation,
      Defendant.

### CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF DAVE HARSHBARGER**

was served with the Complaint to the individual listed below via certified mail, on the 7th day of

September, 2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

                                    Teresa C. Toriseva, Esq.
                                    W.Va. Bar ID #6947
                                    Joshua D. Miller, Esq.
                                      W.Va. Bar ID #12439
                                      Michael A. Kuhn, Esq.
                                      W.Va. Bar ID #13898
                                      TORISEVA LAW
                                      1446 National Road
                                      Wheeling, WV 26003
                                      Phone (304)238-0066
                                      Facsimile (304)238-0149
                                      justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
     Plaintiffs,

     Civil Action No.:  22-C-214
     Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
     Defendant.

<u>NOTICE OF DEPOSITION OF BRIAN BUTCHER</u>

**PLEASE TAKE NOTICE** that the undersigned will take the deposition of **BRIAN BUTCHER** at TORISEVA LAW on **November 9, 2022 at 9:00 a.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

     **BRANDON VIOLA, et al.,**
     **BY COUNSEL**

     Teresa C. Toriseva, Esq.
     W.Va. Bar ID #6947
     Joshua D. Miller, Esq.
     W.Va. Bar ID #12439
     Michael A. Kuhn, Esq.
     W.Va. Bar ID #13898
     TORISEVA LAW
     1446 National Road
     Wheeling, WV 26003
     Phone (304)238-0066
     Facsimile (304)238-0149
     justice@torisevalaw.com

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.*,
      Plaintiffs,

                                  Civil Action No.:
                                  Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

### CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF BRIAN BUTCHER** was

served with the Complaint to the individual listed below via certified mail, on the 7th day of

September, 2022:


**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**


                                *[signature]*

                                Teresa C. Toriseva, Esq.
                                W.Va. Bar ID #6947
                                Joshua D. Miller, Esq.
                                W.Va. Bar ID #12439
                                Michael A. Kuhn, Esq.
                                  W.Va. Bar ID #13898
                                TORISEVA LAW
                                1446 National Road
                                Wheeling, WV 26003
                                Phone (304)238-0066
                                Facsimile (304)238-0149
                                justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
      Plaintiffs,

                                       Civil Action No.: 22-C-214
                                       Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

### NOTICE OF DEPOSITION OF DANIELLE TRUMBLE

**PLEASE TAKE NOTICE** that the undersigned will take the deposition of **DANIELLE TRUMBLE** at TORISEVA LAW on **November 9, 2022 at 11:00 a.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

                                    BRANDON VIOLA, *et al.,*
                                    BY COUNSEL

                                    Teresa C. Toriseva, Esq.
                                    W.Va. Bar ID #6947
                                    Joshua D. Miller, Esq.
                                    W.Va. Bar ID #12439
                                    Michael A. Kuhn, Esq.
                                    W.Va. Bar ID #13898
                                    TORISEVA LAW
                                    1446 National Road
                                    Wheeling, WV 26003
                                    Phone (304)238-0066
                                    Facsimile (304)238-0149
                                    justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
     Plaintiffs,

                                          Civil Action No.:
                                          Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
     Defendant.

### CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF DANIELLE TRUMBLE** was served with the Complaint to the individual listed below via certified mail, on the 7th day of September, 2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

                                                   Teresa C. Toriseva, Esq.
                                                   W.Va. Bar ID #6947
                                                   Joshua D. Miller, Esq.
                                                   W.Va. Bar ID #12439
                                                   Michael A. Kuhn, Esq.
                                                   W.Va. Bar ID #13898
                                                   TORISEVA LAW
                                                   1446 National Road
                                                   Wheeling, WV 26003
                                                   Phone (304)238-0066
                                                   Facsimile (304)238-0149
                                                   justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, et al.,
      Plaintiffs,

                                                      Civil Action No.: **22-C-214**

                                                      Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

### NOTICE OF DEPOSITION OF M. JOE ABU-GHANNAM

**PLEASE TAKE NOTICE** that the undersigned will take the deposition of **M. JOE ABU-GHANNAM** at TORISEVA LAW on **November 11, 2022 at 9:00 a.m.**  Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

                                        BRANDON VIOLA, *et al.*
                                        BY COUNSEL

                                        Teresa C. Toriseva, Esq.
                                        W.Va. Bar ID #6947
                                        Joshua D. Miller, Esq.
                                        W.Va. Bar ID #12439
                                        Michael A. Kuhn, Esq.
                                        W.Va. Bar ID #13898
                                        TORISEVA LAW
                                        1446 National Road
                                        Wheeling, WV 26003
                                        Phone (304)238-0066
                                        Facsimile (304)238-0149
                                        justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
    Plaintiffs,

                                             Civil Action No.:
                                             Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
    Defendant.

### CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF M. JOE ABU-GHANNAM**

was served with the Complaint to the individual listed below via certified mail, on the 7th day of

September, 2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

                                  Teresa C. Toriseva, Esq.
                                  W.Va. Bar ID #6947
                                  Joshua D. Miller, Esq.
                                  W.Va. Bar ID #12439
                                  Michael A. Kuhn, Esq.
                                  W.Va. Bar ID #13898
                                  TORISEVA LAW
                                  1446 National Road
                                  Wheeling, WV 26003
                                  Phone (304)238-0066
                                  Facsimile (304)238-0149
                                  justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
      Plaintiffs,

                                     Civil Action No.:  22-C-214
                                       Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

## NOTICE OF DEPOSITION OF JENNIFER SELIN

**PLEASE TAKE NOTICE** that the undersigned will take the deposition of **JENNIFER SELIN** at TORISEVA LAW on **November 11, 2022 at 11:00 a.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

                                      BRANDON VIOLA, *et al.,*
                                      BY COUNSEL

                                      *Teresa Toriseva*
                                      Teresa C. Toriseva, Esq.
                                      W.Va. Bar ID #6947
                                      Joshua D. Miller, Esq.
                                      W.Va. Bar ID #12439
                                      Michael A. Kuhn, Esq.
                                        W.Va. Bar ID #13898
                                      TORISEVA LAW
                                      1446 National Road
                                      Wheeling, WV 26003
                                      Phone (304)238-0066
                                      Facsimile (304)238-0149
                                      justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, et al.,
     Plaintiffs,

                                        Civil Action No.:
                                        Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
     Defendant.

## CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF JENNIFER SELIN** was served with the Complaint to the individual listed below via certified mail, on the 7th day of September, 2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

                                      _Teresa C. Toriseva_

                                      Teresa C. Toriseva, Esq.
                                      W.Va. Bar ID #6947
                                      Joshua D. Miller, Esq.
                                        W.Va. Bar ID #12439
                                      Michael A. Kuhn, Esq.
                                        W.Va. Bar ID #13898
                                      TORISEVA LAW
                                      1446 National Road
                                      Wheeling, WV 26003
                                      Phone (304)238-0066
                                      Facsimile (304)238-0149
                                      justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
      Plaintiffs,

Civil Action No.: 22-C-214

Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

## NOTICE OF DEPOSITION OF JOHN BIHUN

**PLEASE TAKE NOTICE** that the undersigned will take the deposition of **JOHN BIHUN** at TORISEVA LAW on **November 11, 2022 at 2:00 p.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

BRANDON VIOLA, *et al.,*
BY COUNSEL

Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
      Plaintiffs,

                                    Civil Action No.:
                                    Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

## CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF JOHN BIHUN** was served

with the Complaint to the individual listed below via certified mail, on the 7th day of September,

2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
      Plaintiffs,

Civil Action No.: **22-C-214**
Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

### NOTICE OF DEPOSITION OF KEVIN TENNANT

**PLEASE TAKE NOTICE** that the undersigned will take the deposition of **KEVIN TENNANT** at TORISEVA LAW on **November 15, 2022 at 10:00 a.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

**BRANDON VIOLA, *et al.,***
**BY COUNSEL**

Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
      Plaintiffs,

                                                Civil Action No.:
                                                Judge:

v.

THE CITY OF MORGANTOWN,
a municipal corporation,
      Defendant.

### CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF KEVIN TENNANT** was served with the Complaint to the individual listed below via certified mail, on the 7th day of September, 2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

*[signature]*
Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

BRANDON VIOLA, *et al.,*
        Plaintiffs,

v.

Civil Action No.: 22-C-214
Judge:

THE CITY OF MORGANTOWN,
a municipal corporation,
        Defendant.

### NOTICE OF DEPOSITION OF IXYA VEGA

PLEASE TAKE NOTICE that the undersigned will take the deposition of **IXYA VEGA** at TORISEVA LAW on **November 15, 2022 at 1:30 p.m.** Said deposition will be taken before a person authorized by law to administer oaths, and will continue until complete.

BRANDON VIOLA, *et al.,*
BY COUNSEL

Teresa C. Toriseva, Esq.
W.Va. Bar ID #6947
Joshua D. Miller, Esq.
W.Va. Bar ID #12439
Michael A. Kuhn, Esq.
W.Va. Bar ID #13898
TORISEVA LAW
1446 National Road
Wheeling, WV 26003
Phone (304)238-0066
Facsimile (304)238-0149
justice@torisevalaw.com

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**BRANDON VIOLA,** *et al.,*
        **Plaintiffs,**

                                      **Civil Action No.:**
                                      **Judge:**

**v.**

**THE CITY OF MORGANTOWN,**
a municipal corporation,
        **Defendant.**

## CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF DEPOSITION OF IXYA VEGA** was served with

the Complaint to the individual listed below via certified mail, on the 7th day of September, 2022:

**City of Morgantown, a municipal corporation**
**389 Spruce Street**
**Morgantown, WV 26505**

                                                    */s/ Teresa C. Toriseva*

                                                    Teresa C. Toriseva, Esq.
                                                    W.Va. Bar ID #6947
                                                    Joshua D. Miller, Esq.
                                                    W.Va. Bar ID #12439
                                                    Michael A. Kuhn, Esq.
                                                      W.Va. Bar ID #13898
                                                    TORISEVA LAW
                                                    1446 National Road
                                                    Wheeling, WV 26003
                                                    Phone (304)238-0066
                                                    Facsimile (304)238-0149
                                                    justice@torisevalaw.com

| Return Receipt (Form 3811) Barcode | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| | A. Signature ☑ Agent / ☐ Addressee |
| 9590 9266 9904 2178 1019 21 | B. Received by (Printed Name)    C. Date of Delivery |
| | D. Is delivery address different from item 1? ☐ Yes |
| | If YES, enter delivery address below:   ☐ No |
| 1. Article Addressed to:<br><br>THE CITY OF MORGANTOWN<br>389 SPRUCE STREET<br>MORGANTOWN, WV 26505 | |
| | 3. Service Type: |
| | ☒ Certified Mail |
| | Reference Information |
| | 22-C-214 s/c |
| 2. Certified Mail (Form 3800) Article Number<br>9414 7266 9904 2178 1019 28 | syt |
| PS Form 3811, Facsimile, July 2015 | Domestic Return Receipt |

**FILED**

SEP 1 4 2022

JEAN FRIEND, CLERK